RATNER, TRUSTEE, ET AL., APPELLANTS, *v.* STARK COUNTY BOARD OF
REVISION ET AL., APPELLEES.

[Cite as Ratner *v.* Stark Cty. Bd. of Revision (1986), 23 Ohio St. 3d 59.]

(No. 85-737—Decided April 11, 1986.)

*Fred Siegel Co., L.P.A., Fred Siegel* and *Karen H. Bauernschmidt,* for appellants.

*John B. Wirtz,* for appellees.

*Teaford, Rich, Belskis, Coffman & Wheeler* and *Jeffrey A. Rich,* urging affirmance for *amicus curiae,* Columbus Board of Education.

WRIGHT, J. The taxpayer argues that the BTA valuation of the mall property is unreasonable and unlawful because it does not reflect fair market value as of January 1, 1981.

This court has held that "[t]he fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Bd. of Revision* v. *Fodor* (1968), 15 Ohio St. 2d 52 [44 O.O.2d 30], syllabus. In the instant case, the BTA relied on *Columbus Bd. of Edn.* v. *Fountain Square Assoc., Ltd.* (1984), 9 Ohio St. 3d 218, to reject the evidence presented by the taxpayer's appraisers. The BTA incorrectly interpreted *Fountain Square* to compel a holding that true value is synonymous with sale price.

We have consistently held that "[t]he best evidence of the 'true value in money' of real property is an actual, recent sale of the property in an arm's-length transaction. * * *" *Conalco* v. *Bd. of Revision* (1977), 50 Ohio St. 2d 129 [4 O.O.3d 309], paragraph one of the syllabus. See, also, *Consolidated Aluminum Corp.* v. *Bd. of Revision* (1981), 66 Ohio St. 2d 410, 414 [20 O.O.3d 357]; *Meyer* v. *Bd. of Revision* (1979), 58 Ohio St. 2d 328,

333 [12 O.O.3d 305]; *Fountain Square, supra,* at 219. Although the sale price is the "best evidence" of true value of real property for tax purposes, it is not the only evidence. A review of independent appraisals evaluating the cash equivalency of the sale price is appropriate where it is shown that the sale price does not reflect true value. *Consolidated Aluminum Corp., supra; Fountain Square, supra,* at 219. Evidence presented by the taxpayer's experts clearly rebutted the presumption that the sale price reflected true value.

In *Fountain Square,* this court indicated that evidence of favorable financing alone is insufficient to show that the contract sale price does not reflect true value. *Id.* The appellant in *Fountain Square* produced no evidence other than the terms of the sale to indicate that the sale price did not reflect the true value of the property. In the instant case, the taxpayer presented testimony from two appraisers using traditional valuation methods to establish that the contract sale price did not reflect true value. Although the actual sale price provides strong evidence of market value, specific transaction prices including financing terms should be examined to determine if the transaction reflected market value. Considering the substantial below-market financing assumed by the taxpayer in the purchase of Mellett Mall, the contract sale price alone is not conclusive as to market value.

Neither the board of revision nor the taxpayer urges that the provisions of R.C. 5713.03 are absolutely determinative of this appeal. R.C. 5713.03 provides that the sale price of any tract, lot, or parcel of real estate, which has been the subject of an arm's-length sale between a willing seller and a willing buyer within a reasonable length of time, shall be considered its true value for taxation purposes.

This court has never adopted an absolutist interpretation of this statute. Our decisions and those of other jurisdictions with similar statutes have approved of considering factors that affect the use of the sale price of property as evidence of its true value. Such factors might include: mode of payment, sale-lease arrangements, abnormal economic conditions and the like. *Benedict v. Hamilton Cty. Bd. of Revision* (1959), 170 Ohio St. 62 [9 O.O.2d 458]; *Ramsey v. Bd. of Revision* (1943), 141 Ohio St. 366 [25 O.O. 476]; *Janss Corp. v. Bd. of Equalization* (1970), 93 Idaho 928, 478 P. 2d 878; *Allied Chem. Corp. v. Union Cty. Bd. of Supervisors* (Ky. 1974), 511 S.W. 2d 196; *Alfred J. Sweet, Inc. v. Auburn* (1935), 134 Me. 28, 180 A. 803; *Moran v. Grosse Pointe Twp.* (1947), 317 Mich. 248, 26 N.W. 2d 763; *Rek Invest. Co. v. Newark* (1963), 80 N.J. Super. 552, 194 A. 2d 368; *Plainfield v. State Bd. of Tax Appeals* (1941), 127 N.J. Law 5, 20 A. 2d 651; *Bd. of Equalization v. Heights Real Estate Co.* (1964), 74 N.M. 101, 391 P. 2d 328; *People, ex rel. Owens, v. Schmiedel* (1942), 264 App. Div. 742, 34 N.Y.Supp. 2d 493, affirmed (1943), 290 N.Y. 900, 50 N.E. 2d 298; *Appeal of Secy. of Banking* (1946), 355 Pa. 226, 49 A. 2d 337. See, also, Annotation (1979), 89 A.L.R. 3d 1126, 1135-1139.

Although the sale price may be used to establish the fair market value of the property in question, because of the state constitutional requirement that taxation be uniform, the sale price without adjustments for abnormally low interest rates could not be used to increase the assessment while at the same time using a much lower valuation for comparable property that has been sold without such favorable financing.

In determining true value for property, the board of revision and the BTA must at least consider and review evidence presented by independent real estate appraisers that adjusts the contract sale price to reflect both the price paid for real estate and the price paid for favorable financing. Based on the foregoing, the decision of the BTA is reversed and the cause is remanded for further proceedings in accordance with this opinion.

*Decision reversed*
*and cause remanded.*

SWEENEY, HOLMES and C. BROWN, JJ., concur.

CELEBREZZE, C.J., LOCHER and DOUGLAS, JJ., dissent.

DOUGLAS, J., dissenting. I respectfully dissent. This appeal involves the determination, for tax purposes, of the true value in money of the Mellett Mall shopping center in West Canton, Ohio as of tax lien date, January 1, 1981.

Pursuant to his obligations as set forth in R.C. 5713.03, the Stark County Auditor determined, as part of the triennial update for tax year 1979, that the true value of the property in question for tax year 1979 was $15,899,710. As part of the reevaluation process, this value was to remain in effect for tax years 1980 and 1981. On September 30, 1981, appellants acquired the property and title was transferred on that date. The sale price was $12,540,500. It is not disputed that the sale of the property was an arm's-length transaction between a willing buyer and a willing seller.

On February 11, 1982, appellants filed a complaint with the Stark County Board of Revision contending that the value set by the auditor was excessive and that the valuation should be $10,234,000. The board of revision, after a hearing, determined the true value of the property to be $12,530,000 as of January 1, 1981. Appellants appealed the decision of the board of revision to the Board of Tax Appeals ("BTA"). The BTA, relying on the sale price of the property in September 1981, affirmed the decision of the board of revision and placed the true value of the property at $12,530,000. An appeal to this court followed.

R.C. 5713.03 provides in part:

"* * * In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within

a reasonable length of time, either before or after the tax lien date, the auditor shall consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes. However, the sale price in an arm's length transaction between a willing seller and a willing buyer shall not be considered the true value of the property sold if subsequent to the sale:

"(A)  The tract, lot, or parcel of real estate loses value due to some casualty;

"(B)  An improvement is added to the property. * * *''

It is not surprising that the majority opinion makes only a passing reference to this provision of R.C. 5713.03. A more detailed analysis would have required some explanation by the majority why the clear dictates of the statute were not being followed. Here the tax lien date in question was January 1, 1981. The sale of the property was within nine months of that date, certainly a reasonable time. There is no contention that some casualty occurred with regard to the property nor is the improvement exception applicable. Thus, the clear dictates of the statute require that the auditor *shall* consider the sale price to be the true value for taxation purposes. Of course, the board of revision and the BTA are likewise bound by the statutory mandates. In essentially ignoring this statutory provision, the majority opinion then is able to arrive at its desired result.

In addition to ignoring the pertinent statutory provision, the majority has also disregarded established case law. As recently as 1984, this court, in *Columbus Bd. of Edn.* v. *Fountain Square Assoc., Ltd.* (1984), 9 Ohio St. 3d 218, said at 219:

"We have consistently adhered to the rule that '[t]he best evidence of the "true value in money" of real property is an actual, recent sale of the property in an arm's-length transaction. * * *' * * *

"Appraisals based upon factors other than sales price are appropriate for use in determining value *only* when no arm's-length sale has taken place * * *, or where it is shown that the sales price is not reflective of true value * * *.'' (Emphasis added.)

Certainly the fact that a party obtains favorable financing does not render the sale price of a piece of property unrepresentative of true value.

Likewise, in a long line of cases, this court has held that the true or fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities and this court will not disturb a decision of the BTA with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful. See *Wolf* v. *Cuyahoga Cty. Bd. of Revision* (1984), 11 Ohio St. 3d 205, 206; *Canton Towers, Ltd.* v. *Bd. of Revision* (1983), 3 Ohio St. 3d 4, 6; *Consolidated Aluminum Corp.* v. *Bd. of Revision* (1981), 66 Ohio St. 2d 410, 414 [20 O.O.3d 357]; *Bd. of Revision* v. *Fodor* (1968), 15 Ohio St. 2d 52 [44 O.O.2d 30], syllabus. There is no showing here that the decision of the BTA was either unreasonable or unlawful.

While I manifest concern with the majority opinion giving short shrift to the statute and case law pertinent to this appeal, I take umbrage with today's decision because of an even greater concern. In reversing the decision of the BTA, the practical effect will be that county auditors, boards of revision and the BTA will be required to engage in an endless number of subjective adjustments in every sale of real property in order to determine the "cash equivalency" of the sale price. Appraisers will be required, in every sale case, to value the notes and mortgages. Lost in the process would be the only objective criterion for determining market value — an actual sale. Replacing this objective criterion would be the subjective arguments of appraisers as to what value must be placed on the financing that went with the transaction.

Finally, it should be noted that the very direction to the BTA, given by the majority upon remand, to "review evidence presented by independent real estate appraisers that adjusts the contract sale price to reflect both the price paid for real estate and the price paid for favorable financing" was, in fact, done by the BTA. Even a cursory review of the record reveals that the BTA heard and considered all of appellants' evidence, including that of its independent appraiser, and reviewed appellants' appraisals. The BTA in its final order and decision stated:

"Giving full consideration to the *totality* of the evidence presented, the Board of Tax Appeals hereby finds and determines that the [fair market] value of the subject real property was as follows for the year in issue:

"* * *

"Total $12,530,000 * * *." (Emphasis added.)

This court has consistently stated that we will not act as a trier of fact to review the board's factual determinations. *Operation Evangelize* v. *Kinney* (1982), 69 Ohio St. 2d 346, 347 [23 O.O.3d 315]. What more would the majority have the BTA do?

Accordingly, I dissent.

CELEBREZZE, C.J., and LOCHER, J., concur in the foregoing dissenting opinion.