SOUTH EUCLID/LYNDHURST BOARD OF EDUCATION, APPELLEE, *v.* CUYAHOGA COUNTY BOARD OF REVISION; C.I.A. PROPERTIES, APPELLANT.

[Cite as *S. Euclid/Lyndhurst Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 314.]

(No. 94–1726—Submitted September 14, 1995—Decided January 17, 1996.)

316

*Kolick & Kondzer* and *Daniel J. Kolick,* for appellee.

*Fred Siegel Co., L.P.A., Fred Siegel* and *Annrita S. Johnson,* for appellant.

*Per Curiam.* C.I.A. Properties argues that (1) the BTA should have found the sale to be the best evidence of the property's value, (2) the BOE did not establish an increase in the true value of the property, (3) the BOE appraised the property according to its current use and not according to its exchange value, and (4) the BOE's complaint should be dismissed because it attached copies of two different decisions to its notice of appeal. Since we disagree with all of these contentions, we affirm the BTA's decision.

As to the first claim, in *Ratner v. Stark Cty. Bd. of Revision* (1986), 23 Ohio St.3d 59, 23 OBR 192, 491 N.E.2d 680, syllabus, we held:

"Although the sale price is the 'best evidence' of true value of real property for tax purposes, it is not the only evidence. A review of independent appraisals based upon factors other than the sale price is appropriate where it is shown that the sale price does not reflect true value. [Citation omitted.]"

In *Ratner*, the taxpayer purchased a shopping mall center under favorable financing terms. The taxpayer presented evidence of the cash equivalency of the purchase and a fair market valuation appraisal of the property. Both of these evidentiary items indicated that the true value of the property was less than the purchase price. The court stated that the actual sale price provides strong evidence of market value. However, according to the court, certain types of transactions, albeit arm's-length transactions, call into question whether the sale price reflects the true value of the property. Among the types of sales mentioned in *Ratner*, prompting an investigation of the sale, is a sale-lease arrangement. Moreover, on two occasions, *Kroger Co. v. Hamilton Cty. Bd. of Revision* (1993), 67 Ohio St.3d 145, 616 N.E.2d 877, and *Cleveland Hts./Univ. Hts. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1995), 72 Ohio St.3d 189, 648 N.E.2d 811, we have affirmed BTA findings that the purchase price in sale/leaseback transactions did not establish the true value of the property.

Here, the BTA discounted the sale price because "[b]oth the buyer and the seller wanted Society to stay at the subject location, and would not have consummated the deal if Society had not remained. Thus, the parties' primary goal was to arrive at a price where both would be satisfied enough to allow Society to lease the subject after the sale. The transaction was made to reduce Society's 'exposure' in real estate overall and to maintain its branch locations in the most optimum locations, and as a result, the selling price was dictated by the specific needs of the parties, not the market value of the property. Clearly, since Society had determined that it ultimately wanted to remain in the subject location, it was motivated to bargain for a sale price for the subject *in conjunction with* a rental rate, making concessions on the sale price for corresponding concessions in the rental rate. Based upon the information provided to this Board by appellant's appraiser, those rates are not supported by market data. * * *" (Emphasis added in part.)

We agree with this analysis. This transaction, concededly an arm's-length transaction, does not reflect the true value of the property. Canitia and West agreed that a willing buyer would pay less for a property if the leaseback arrangement limited the amount of rent the buyer could collect. The BTA's finding that this occurred, thus, is warranted. See *Safeway Stores v. Dist. of Columbia* (D.C.App.1987), 525 A.2d 207, 212, fn. 4 (" * * * [T]o accomplish this goal [of creating artificial sale and leaseback arrangements to lower property values], the sale and leaseback contract may well represent an 'arms-length' deal:

both sides can benefit from a cheap leaseback as long as the sale price is sufficiently low. There need be no illicit collusion.").

The parties also dispute whether the rent negotiated by Society was market rent. The BTA determined that the negotiated rent was not at market and that the rent assigned by Canitia after his study was. We conclude that the evidence supports the BTA's finding, and we affirm it. *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257, syllabus.

Second, C.I.A. Properties, in essence, disputes various aspects of Canitia's report and testimony. C.I.A. Properties did not present any competing appraisal report. As we stated in *Wolf v. Cuyahoga Cty. Bd. of Revision* (1984), 11 Ohio St.3d 205, 207, 11 OBR 523, 524, 465 N.E.2d 50, 52, "[a] great deal of appellants' argument is devoted to the rebuttal of appellees' expert's testimony. Ultimately, they conclude that none of his conclusions is credible enough to be relied on by the BTA. However, such a determination is precisely the kind of factual matter to be decided by the BTA. * * * There is no indication on the face of the record of any abuse of discretion, nor have appellants proven any violation by the BTA, which would render the decision unreasonable or unlawful."

Next, C.I.A. Properties complains that the BTA valued the property on its current use, not its value in exchange, because it adopted Canitia's valuation despite Canitia's admission that he valued it as a bank and three retail stores. C.I.A. Properties quotes from *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision* (1984), 12 Ohio St.3d 270, 271, 12 OBR 347, 348, 466 N.E.2d 909, 910–911, in which we stated:

"Initially we note that Section 2, Article XII of the Ohio Constitution mandates that valuations of property cannot be limited to considerations of current use only to the exclusion of all other relevant factors."

However, C.I.A. Properties fails to quote the next sentence, which states: "It does not prohibit altogether any consideration of the present use of a property." *Id.* at 271, 12 OBR at 348, 466 N.E.2d at 911. We conclude that the BTA properly regarded Canitia's report in light of his considering the property for its present use as well as for any future uses.

Finally, C.I.A. Properties claims that the BTA should have dismissed the notice of appeal because the BOE attached copies of both the BOR's decisions to the notice of appeal. The BTA explained that the BOR issued a decision on C.I.A. Properties' complaint, reducing the value of the property, and one on the BOE's complaint, denying an increase in the value of the property. Both decisions were for the same property for the same tax year, stating the same value for the property. The BTA found that "the dual attachment to the notice of appeal to be nothing more than 'overkill' and does not construe same to be an attempt to

appeal both of the decisions from the Cuyahoga County Board of Revision. * * * "

R.C. 5717.01 states:

"An appeal from a decision of a county board of revision may be taken to the board of tax appeals within thirty days after notice of the decision of the county board of revision is mailed as provided in section 5715.20 of the Revised Code. * * * Such appeal shall be taken by the filing of a notice of appeal, either in person or by certified mail, with the board of tax appeals and with the county board of revision. * * * Upon receipt of such notice of appeal such county board of revision shall by certified mail notify all persons thereof who were parties to the proceeding before such county board of revision, and shall file proof of such notice with the board of tax appeals. The county board of revision shall thereupon certify to the board of tax appeals a transcript of the record of the proceedings of the county board of revision pertaining to the original complaint, and all evidence offered in connection therewith. * * * "

We note that DTE Form 4, the Notice of Appeal form, directs an appellant to attach a copy of the BOR decision to the notice of appeal. However, R.C. 5717.01 does not require a BTA appellant to do so. Cf. R.C. 5717.02. We regard attaching a copy of the BOR decision to the notice of appeal as a non-jurisdictional providing of supplemental information. *Nucorp, Inc. v. Montgomery Cty. Bd. of Revision* (1980), 64 Ohio St.2d 20, 18 O.O.3d 191, 412 N.E.2d 947. Attaching a copy of a related BOR decision to a notice of appeal does not result in dismissal of the appeal.

"While this court has never encouraged or condoned disregard of procedural schemes logically attendant to the pursuit of a substantive legal right, it has also been unwilling to find or enforce jurisdictional barriers not clearly statutorily or constitutionally mandated, which tend to deprive a supplicant of a fair review of his complaint on the merits." *Id.* at 22, 18 O.O.3d at 192, 412 N.E.2d at 948.

Accordingly, we affirm the decision of the BTA because it is reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.