KNOWLTON REALTY COMPANY, APPELLANT, *v.* DARKE COUNTY BOARD OF REVISION, APPELLEE.

[Cite as *Knowlton Realty Co. v. Darke Cty. Bd. of Revision* (1997), 77 Ohio St.3d 438.]

(No. 96–1015—Submitted October 31, 1996—Decided February 19, 1997.)

440

*Arter & Hadden* and *Karen H. Bauernschmidt; Bieser, Greer & Landis* and *David Greer,* for appellant.

*Jonathon P. Hein,* Darke County Prosecuting Attorney, and *Richard M. Howell,* Assistant Prosecuting Attorney, for appellee.

*Per Curiam.* The testimony presented to the BTA in the prior case involving Knowlton's purchase of the real property left many questions concerning the relationship between the buyer and the seller partially or totally unanswered. Even in this case, where both the buyer and the seller testified, many questions were left unanswered. The burden in this case was on Knowlton, as the appellant before the BTA, to prove its right to a decrease in value. *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 202, 527 N.E.2d 874, 878.

Knowlton contends that the BTA committed several errors in its consideration of this case. Because the ultimate question is the true value of the real property, we will first address Knowlton's contention concerning value. Knowlton contends that the BTA failed to properly consider the evidence of value presented at the hearing before the BTA. The disagreement concerns two provisions of the agreement of sale, and the BTA's determination of the effect of these two provisions on the value of the real property.

Article 2 of the agreement of sale provided that the buyer was to take the real property subject to a certain mortgage and financing statements. Knowlton did not assume the mortgage; it purchased the real property subject to the mortgage. No evidence was introduced by Knowlton to prove either the amount of the outstanding balance on the note secured by the mortgage, or the payment

status of the note at the time of the sale. Furthermore, the current payor of the note was not identified. The only fact that is known about the mortgage is that at the time of the sale Stephen Lambert's father held the mortgage.

In addition, Article 4 of the agreement of sale granted an indemnification not only to Tanson, the seller, but also to Willoughby, personally. The indemnification held Tanson and Willoughby harmless from any claims or costs on any environmental issue arising from operations by Lambert Corporation until mid–1986. Article 4 further stated that "[i]ndemnified parties other than Buyer and Seller are intended to be Third Party Beneficiaries hereof." Willoughby testified that the indemnity clause was "very important to us" in the sale. He explained that he felt "there were potentially a whole series of environmental shadows on the property" and that he did not want "to deal with these issues again." How much the indemnification was worth to Willoughby and/or Tanson as part of the sales price was not disclosed.

The BTA found that "these provisions significantly affected the economics of the transaction," which caused the sale price "not [to be] the best evidence of the true value of the subject property." We agree.

There are two independent reasons why the $25,000 cash payment did not represent the true value of this property. Knowlton purchased the property encumbered by a mortgage. However, Knowlton presented no evidence to indicate how the price would have changed if the property had not been so encumbered. In *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision* (1988), 37 Ohio St.3d 16, 523 N.E.2d 826, we held in paragraph one of the syllabus, that "[f]or real property tax purposes, the fee simple estate is to be valued as if it were unencumbered." See, also, *Muirfield Assn., Inc. v. Franklin Cty. Bd. of Revision* (1995), 73 Ohio St.3d 710, 654 N.E.2d 110. In this case the value placed on the property by Knowlton clearly was not the unencumbered value. No evidence was produced by Knowlton to attempt to show what the value of the property would have been if it had been sold unencumbered by the mortgage.

A second element of value that Knowlton ignored was the value of the indemnity given to Tanson and Willoughby. Here, again, Knowlton did not introduce any evidence to show how the value would have been affected if Willoughby had not insisted on an indemnity. The indemnity was a very important part of the contract to Willoughby. Knowlton contended that this property had some environmental problems; however, there is very little evidence of the nature of the environmental problems or the current environmental status of the property. In dealing with property such as that in this case, which allegedly has been environmentally tainted, an indemnity agreement could potentially represent a larger portion of the value than any cash payment. In this case

Knowlton made no attempt to account for the value of the indemnity agreement as part of the value of the property.

In *Ratner v. Stark Cty. Bd. of Revision* (1986), 23 Ohio St.3d 59, 23 OBR 192, 491 N.E.2d 680, we considered a situation where a property was sold for $500,000 in cash, a $6,000,000 note, and the assumption of $6,040,500 in mortgages with interest rates ranging from 5–3/4 percent to 9 percent. The taxpayer in *Ratner* contended that the price paid for the property did not reflect true value because the price paid included an amount for favorable financing. To substantiate its contention, the taxpayer in *Ratner* presented an appraisal of his estimate of value. After reviewing the facts we stated, "Although the actual sale price provides strong evidence of market value, specific transaction prices including financing terms should be examined to determine if the transaction reflected market value. Considering the substantial below-market financing assumed by the taxpayer in the purchase, * * * the contract price alone is not conclusive as to market value." *Id.* at 61, 23 OBR at 193–194, 491 N.E.2d at 682. See, also, *Zazworsky v. Licking Cty. Bd. of Revision* (1991), 61 Ohio St.3d 604, 575 N.E.2d 842.

As found by the BTA, the cash price paid for the property in this case did not represent the best evidence of the true value of the property. Knowlton, therefore, failed to sustain its burden to establish true value. In *Cuyahoga Cty. Bd. of Revision v. Fodor* (1968), 15 Ohio St.2d 52, 44 O.O.2d 30, 239 N.E.2d 25, syllabus, we held, "The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." Because Knowlton failed to meet its burden of proving true value, we need not address the other contentions raised by Knowlton in its appeal.

The decision of the BTA is supported by the evidence and is reasonable and lawful. The decision is, therefore, affirmed.

*Decision affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., concurs in the judgment.