[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 438.]

**KNOWLTON REALTY COMPANY, APPELLANT, *v*. DARKE COUNTY BOARD OF REVISION, APPELLEE.**

[Cite as *Knowlton Realty Co. v. Darke Cty. Bd. of Revision*, 1997-Ohio-255.]

*Taxation—Real property valuation—Determination of true value—Decision of Board of Tax Appeals reasonable and lawful when supported by evidence.*

(No. 96-1015—Submitted October 31, 1996—Decided February 19, 1997.)

APPEAL from the Board of Tax Appeals, No. 94-J-497.

————————————

{¶ 1} Appellant, Knowlton Realty Company ("Knowlton"), filed a real property valuation complaint for the tax year 1993 with the Darke County Board of Revision ("BOR"). In the complaint, Knowlton alleged that its real property had a true value of $25,000. The county auditor had assessed the real property based on a true value of $471,800. The BOR made no change in the auditor's determination of true value. Knowlton subsequently filed an appeal with the Board of Tax Appeals ("BTA").

{¶ 2} The real property, which consists of five parcels totaling 19.244 acres, is located in Ansonia, Ohio. The real property is improved with a house and three industrial buildings comprising a metal products manufacturing facility. The same real property was the subject of *Tanson Holdings, Inc. v. Darke Cty. Bd. of Revision* (1996), 74 Ohio St.3d 687, 660 N.E.2d 1216.

{¶ 3} In 1988, a corporation owned by Thomas Willoughby purchased all the stock of Lambert Corporation from William Lambert and his wife. When Willoughby's company purchased the stock, Lambert Corporation owned both the real property in question and the manufacturing business located on the real property. Later, in August 1990, Willoughby split the ownership of the business and the real property by transferring all the real property to Tanson Holdings, Inc.

("Tanson"), another corporation owned by Willoughby. When Lambert Corporation transferred the real property to Tanson, Tanson declared the real property to be worth $950,000.

{¶ 4} Willoughby testified that while Lambert Corporation owned the real property, three underground storage tanks were discovered on the land. He further stated that Tanson had spent over $100,000 to clean up the existing environmental problems. For reasons which were not explained fully, Willoughby closed down the business in September 1993.

{¶ 5} The machinery used in the business was acquired by K. Home Products through a forgiveness-of-debt foreclosure. K. Home Products in turn sold the equipment to Lambert Manufacturing Corporation ("Lambert Manufacturing"), a new corporation solely owned by Stephen Lambert.

{¶ 6} Stephen Lambert, who had been president of Lambert Corporation, left in the fall of 1986. Stephen Lambert stated that his departure from Lambert Corporation was not amicable and that he was at odds with his father, William Lambert, who was the chief executive officer and chairman of Lambert Corporation.

{¶ 7} Willoughby initially offered the real property to Stephen Lambert for $1,000,000. The parties negotiated over a six-week period and eventually agreed on a cash price of $25,000. Stephen Lambert testified that before he purchased the real property he walked through it with Willoughby's consultant and reviewed a four-book study of the phase III environmental analysis.

{¶ 8} In addition to the $25,000 cash price, the agreement of sale stated that Knowlton was to take the real property subject to a certain mortgage and financing statements held by William Lambert. The terms of the agreement of sale also required both Knowlton and Stephen Lambert to indemnify and hold Tanson and Willoughby harmless against any future cost or liability arising from any environmental issue connected with the Lambert Corporation's operation of the real

property, up to the date Stephen Lambert ceased being an employee of Lambert Corporation (approximately mid-1986). Both Willoughby and Stephen Lambert personally signed a statement, which appeared on the agreement of sale, providing that as to the indemnification contained in Article 4, "there is valuable consideration."

{¶ 9} The BOR's sole witness was expert real estate appraiser Thomas Johnson. Johnson testified that he had been familiar with this property since 1990 and was the person responsible for recommending to the auditor the final determination of value, $471,800.

{¶ 10} The BTA determined that the true value of the real property was $471,800 and Knowlton filed a notice of appeal with this court.

{¶ 11} This cause is now before the court upon an appeal as of right.

*Arter & Hadden* and *Karen H. Bauernschmidt; Bieser, Greer & Landis* and *David Greer*, for appellant.

*Jonathon P. Hein*, Darke County Prosecuting Attorney, and *Richard M. Howell,* Assistant Prosecuting Attorney, for appellee.

_____

***Per Curiam.***

{¶ 12} The testimony presented to the BTA in the prior case involving Knowlton's purchase of the real property left many questions concerning the relationship between the buyer and the seller partially or totally unanswered. Even in this case, where both the buyer and the seller testified, many questions were left unanswered. The burden in this case was on Knowlton, as the appellant before the BTA, to prove its right to a decrease in value. *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 202, 527 N.E.2d 874, 878.

{¶ 13} Knowlton contends that the BTA committed several errors in its consideration of this case. Because the ultimate question is the true value of the real property, we will first address Knowlton's contention concerning value.

Knowlton contends that the BTA failed to properly consider the evidence of value presented at the hearing before the BTA. The disagreement concerns two provisions of the agreement of sale, and the BTA's determination of the effect of these two provisions on the value of the real property.

{¶ 14} Article 2 of the agreement of sale provided that the buyer was to take the real property subject to a certain mortgage and financing statements. Knowlton did not assume the mortgage; it purchased the real property subject to the mortgage. No evidence was introduced by Knowlton to prove either the amount of the outstanding balance on the note secured by the mortgage, or the payment status of the note at the time of the sale. Furthermore, the current payor of the note was not identified. The only fact that is known about the mortgage is that at the time of the sale Stephen Lambert's father held the mortgage.

{¶ 15} In addition, Article 4 of the agreement of sale granted an indemnification not only to Tanson, the seller, but also to Willoughby, personally. The indemnification held Tanson and Willoughby harmless from any claims or costs on any environmental issue arising from operations by Lambert Corporation until mid-1986. Article 4 further stated that "[i]ndemnified parties other than Buyer and Seller are intended to be Third Party Beneficiaries hereof." Willoughby testified that the indemnity clause was "very important to us" in the sale. He explained that he felt "there were potentially a whole series of environmental shadows on the property" and that he did not want "to deal with these issues again." How much the indemnification was worth to Willoughby and/or Tanson as part of the sales price was not disclosed.

{¶ 16} The BTA found that "these provisions significantly affected the economics of the transaction," which caused the sale price "not [to be] the best evidence of the true value of the subject property." We agree.

{¶ 17} There are two independent reasons why the $25,000 cash payment did not represent the true value of this property. Knowlton purchased the property

encumbered by a mortgage. However, Knowlton presented no evidence to indicate how the price would have changed if the property had not been so encumbered. In *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision* (1988), 37 Ohio St.3d 16, 523 N.E.2d 826, we held in paragraph one of the syllabus, that "[f]or real property tax purposes, the fee simple estate is to be valued as if it were unencumbered." See, also, *Muirfield Assn., Inc. v Franklin Cty. Bd. of Revision* (1995), 73 Ohio St.3d 710, 654 N.E.2d 110. In this case the value placed on the property by Knowlton clearly was not the unencumbered value. No evidence was produced by Knowlton to attempt to show what the value of the property would have been if it had been sold unencumbered by the mortgage.

{¶ 18} A second element of value that Knowlton ignored was the value of the indemnity given to Tanson and Willoughby. Here, again, Knowlton did not introduce any evidence to show how the value would have been affected if Willoughby had not insisted on an indemnity. The indemnity was a very important part of the contract to Willoughby. Knowlton contended that this property had some environmental problems; however, there is very little evidence of the nature of the environmental problems or the current environmental status of the property. In dealing with property such as that in this case, which allegedly has been environmentally tainted, an indemnity agreement could potentially represent a larger portion of the value than any cash payment. In this case Knowlton made no attempt to account for the value of the indemnity agreement as part of the value of the property.

{¶ 19} In *Ratner v. Stark Cty. Bd. of Revision* (1986), 23 Ohio St.3d 59, 23 OBR 192, 491 N.E.2d 680, we considered a situation where a property was sold for $500,000 in cash, a $6,000,000 note, and the assumption of $6,040,500 in mortgages with interest rates ranging from 5-3/4 percent to 9 percent. The taxpayer in *Ratner* contended that the price paid for the property did not reflect true value because the price paid included an amount for favorable financing. To substantiate

its contention, the taxpayer in *Ratner* presented an appraisal of his estimate of value. After reviewing the facts we stated, "Although the actual sale price provides strong evidence of market value, specific transaction prices including financing terms should be examined to determine if the transaction reflected market value. Considering the substantial below-market financing assumed by the taxpayer in the purchase, * * * the contract price alone is not conclusive as to market value." *Id.* at 61, 23 OBR at 193-194, 491 N.E.2d at 682. See, also, *Zazworsky v. Licking Cty. Bd. of Revision* (1991), 61 Ohio St.3d 604, 575 N.E.2d 842.

{¶ 20} As found by the BTA, the cash price paid for the property in this case did not represent the best evidence of the true value of the property. Knowlton, therefore, failed to sustain its burden to establish true value. In *Cuyahoga Cty. Bd. of Revision v. Fodor* (1968), 15 Ohio St.2d 52, 44 O.O.2d 30, 239 N.E.2d 25, syllabus, we held, "The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." Because Knowlton failed to meet its burden of proving true value, we need not address the other contentions raised by Knowlton in its appeal.

{¶ 21} The decision of the BTA is supported by the evidence and is reasonable and lawful. The decision is, therefore, affirmed.

*Decision affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., concurs in the judgment.

_____