[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 543.]

REYNOLDSBURG BOARD OF EDUCATION, APPELLEE, *v*. LICKING COUNTY

BOARD OF REVISION, APPELLANT.

[Cite as *Reynoldsburg Bd. of Edn. v. Licking Cty. Bd. of Revision*,

1997-Ohio-185.]

*Taxation—Real property valuation—Board of Tax Appeals' decision finding sale price of vacant land in May 1994 as the true value in money was recent enough to establish the value for the property as of January 1, 1994, the tax lien date, and is reasonable and lawful.*

(No. 96-1547—Submitted January 14, 1997—Decided June 11 , 1997.)

Appeal from the Board of Tax Appeals, No. 95-J-873.

————————————

{¶ 1} On May 23, 1994, Mid-Ohio Development Corporation, appellee, purchased vacant land in the Reynoldsburg school district, designated permanent parcel number 13-030180-00-122 by the Licking County Auditor, for $368,392.50. Noting that the auditor had valued the property for tax year 1994 at $337,000, the Reynoldsburg Board of Education ("BOE"), appellee, filed a complaint with the Licking County Board of Revision ("BOR"), appellant. The BOE sought to increase the valuation of the property to the purchase price. However, the BOR affirmed the auditor's value of $337,000.

{¶ 2} The BOE appealed this decision to the Board of Tax Appeals ("BTA"). At the BTA, the auditor, George D. Buchanan, explained his and the BOR's position. He accepted the sales price as the true value in money of the property as of May 23, 1994. However, he reduced the value to what he concluded the property was worth as of January 1, 1993, the date of the last valuation update that the county had undergone. He did this, he claims, to comply with Ohio Adm. Code 5705-3-07 and 5705-3-08.

**{¶ 3}** The BTA, nonetheless, rejected the auditor's explanation. The BTA found that the sale price on May 23, 1994, was recent enough to establish the value for the property as of January 1, 1994, the tax lien date in question. The BTA, therefore, found that the true value of the property as of this date was $368,400.

**{¶ 4}** The cause is now before this court upon an appeal as of right.

*Green & Hughes Co., L.P.A*., and *Martin J. Hughes III*, for appellee.

*Robert L. Becker*, Licking County Prosecuting Attorney, and *Pauline E. O'Neill*, Assistant Prosecuting Attorney, for appellant.

_____

***Per Curiam.***

**{¶ 5}** Appellant argues that the Tax Commissioner's rules require the auditor to adjust a sale price to reflect the value of the parcel on the date of the last sexennial reappraisal or triennial update. We disagree and affirm the BTA's decision.

**{¶ 6}** Appellant cites Ohio Adm. Code 5705-3-07, which pertains to land, in support of its argument. This rule states:

"(A) General—All land shall be appraised at its true value in money as of tax lien date of the year in which the appraisal or update of value is made. *** "

**{¶ 7}** Appellants have taken this rule out of context. Ohio Adm. Code 5705-3-01 defines "true value in money," the valuation standard in Ohio, as the fair market value of the property, if appraised, or "[t]he price at which property *did change hands* under the conditions described in section 5713.03 of the Revised Code, within a reasonable length of time either before or after the tax lien date ***." (Emphasis added.)

**{¶ 8}** This complies with our directives. In *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 412, 25 O.O. 2d 432, 433, 195 N.E. 2d 908, 910, we held that Section 2, Article XII, Ohio Constitution, requires that "all real property, regardless of its nature or use, may be assessed and taxed only

2

by a uniform rule on the basis of value." We ruled that the true value in money was the standard and that the best method to determine this value was an actual arm's-length sale of the property. If a sale had not occurred, an appraisal employing the various methods of valuation would satisfy the Constitution. *Id*. at 412, 25 O.O.2d at 434, 195 N.E.2d at 910. In conclusion, we ordered the BTA, then the agency required by statute to ensure uniformity of value, "to perform its statutory duty by reviewing the tax assessments * * * in relation to whether such assessments were made by uniform rule and if it finds that discrepancies exist in the tax assessments, as a whole or among the various classes of property, to direct such an order as is necessary to the county auditor to equalize such assessments." *Id*. at 414, 25 O.O.2d at 434, 195 N.E.2d at 911.

{¶ 9} After a series of decisions, we ruled, in *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1972), 32 Ohio St.2d 28, 61 O.O. 2d 238, 289 N.E.2d 579, that the BTA's efforts, and the General Assembly's enactments, satisfied our mandate. The legislature commanded and the BTA set up a staggered, sexennial system of re-evaluating counties, later amended to include a triennial update, that practically brought all properties into uniformity in valuation. Nevertheless, we have always insisted that the sale price of an arm's-length transaction occurring within a reasonable time of the tax lien date was the value of the property as of the tax lien date. *Dublin-Sawmill Properties v. Franklin Cty. Bd. of Revision* (1993), 67 Ohio St.3d 575, 621 N.E.2d 693.

{¶ 10} In *Meyer v Cuyahoga Cty. Bd. of Revision* (1979), 58 Ohio St.2d 328, 12 O.O.3d 305, 390 N.E.2d 796, we approved valuing a property at its sale price despite values of other, neighboring properties being the appraised value as of the last sexennial reappraisal date. In paragraph one of the syllabus we held that a county board of revision does not violate Section 2, Article XII, Ohio Constitution, when it reappraises the individual parcel based on its most recent sale price. In paragraph two of the syllabus, we held that this process does not violate

the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. In closing, we stated, *id*. at 335, 12 O.O.3d at 309, 390 N.E. 2d at 800:

"The system of taxation unfortunately will always have some inequality and nonuniformity attendant with such governmental function. It seems that perfect equality in taxation would be utopian, but yet, as a practicality, unattainable. We must satisfy ourselves with a principle of reason that practical equality is the standard to be applied in these matters, and this standard is satisfied when the tax system is free of systematic and intentional departures from this principle."

{¶ 11} Accordingly, we affirm the decision of the BTA because it is reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 12} The majority affirmed the BTA's finding that the auditor's reduction of the sale price of the subject property by an inflationary reduction factor in order to value said property for tax purposes was contrary to law. I disagree.

{¶ 13} In *Ratner v. Stark Cty. Bd. of Revision* (1986), 23 Ohio St. 3d 59, 23 OBR 192, 491 N.E. 2d 680, syllabus, we held:

"Although the sale price is the 'best evidence' of true value of real property for tax purposes, it is not the only evidence. A review of independent appraisals based upon factors other than the sale price is appropriate where it is shown that the sale price does not reflect true value."

{¶ 14} The court in *Ratner* rejected the view that true value was synonymous with the sale price. Stating that the court "has never adopted an absolutist interpretation" of R.C. 5713.03, *Ratner* held that the sale price could be

supplemented with or refuted by other compelling evidence. The court cited "abnormal economic conditions" as one example of other factors that could be considered in determining true value. *Id*. at 61, 23 OBR at 194, 491 N.E. 2d at 682.

{¶ 15} The parcel in question sold for $368,392.50. However, the BOR determined the value of the parcel to be $337,000. In reviewing the BOR's affirmation of the auditor's $337,000 valuation, the BTA stated: "The Licking County Auditor is of the opinion that this sale [$368,392.50] should not be considered in determining the value of the subject real property for the tax year 1994." However, the testimony of the auditor refutes that this was his opinion.

{¶ 16} In explaining how he arrived at the $337,000 appraisal value, the auditor stated that he *recognized* and *implemented* the procedure of using arm's-length transactions to determine the valuation of property. Specifically, in this case, the auditor stated that he clearly considered the sale price of the parcel and used that figure as the basis for his valuation. However, the auditor went on to state: "It is our contention that appreciation of values in a county will cause the new buyers of real property to be paying higher taxes than comparable properties which have not sold since the tax lien date referred to in rules 5705-3-07 and 5705-3-08."

{¶ 17} Citing the "rapid inflation" in western Licking County, the auditor explained that "[i]n this case we used a reduction factor of 8.5% because the sale is nearly five full months into 1994. When you apply this reduction factor to the selling price of $368,393, you will arrive at a value of $337,080. * * * This was the value used as of the tax lien date of January 1, 1993, the date of the last reappraisal of all properties in Licking County." Thus, contrary to the BTA's conclusions, the auditor *did* consider the sale price in appraising the parcel. The auditor adjusted the amount of the sale price to reflect the inflation that had taken place since the last reappraisal of property in Licking County.

{¶ 18} R.C. 5713.01(B) states, in part, that the county auditor "* * * may *increase or decrease* the true or taxable value of any lot or parcel of real estate in

any township, municipal corporation, or other taxing district by an amount which will cause all real property on the tax list to be valued as required by law, or he may increase or decrease the aggregate value of all real property, or any class of real property, in the county, township, municipal corporation, or other taxing district, or in any ward or other division of a municipal corporation *by a per cent or amount which will cause all property to be properly valued and assessed for taxation in accordance with Section 36, Article II, Section 2, Article XII, Ohio Constitution, this section, and sections 5713.03, 5713.31, and 5715.01 of the Revised Code.*" (Emphasis added.)

{¶ 19} Ohio Adm. Code 5705-3-07(A) states:

"* * * All land shall be appraised at its true value in money as of the tax lien date of the year in which the appraisal or update of values is made. * * *" (Emphasis added.)

{¶ 20} The valuation of the parcel in question for taxation purposes was not accurately represented by the sale price only. The issue was not whether the sale was too remote in time, but whether other factors, such as rapid inflation, impacted that true value. The auditor's application of a reduction factor may have been justified to achieve a more accurate valuation. The $18,392.50 increase in the sale price of the property within a twenty-one-day period also supported the auditor's position. The admission of other evidence (such as inflation of other county property) should be allowed. *Ratner*. An inaccurate valuation could result in an inflated (or deflated) tax value that is not uniform as is required by the Revised Code.

{¶ 21} Perhaps because the September 16, 1993 sale price was $337,000 and the auditor assessed that amount as the tax value as of the January 1, 1993 tax lien, the BTA may have dismissed the 8.5 percent figure as merely a convenient artifice and not credible. However, the decision is silent as to whether the BTA even evaluated that evidence. If the BTA evaluated that evidence and discarded it

6

as not credible, then its decision would be supported.  This court does not sit as a super court to reweigh the evidence.  Since the decision erroneously concluded that the auditor *ignored* the $368,000 sale price, we must assume the BTA also did not judge the merits of the 8.5 percent inflation factor.

{¶ 22} Therefore, I would find the BTA's decision to be unlawful and unreasonable.  *Cuyahoga Cty. Bd. of Revision v. Fodor* (1968), 15 Ohio St. 2d 52, 44 O. O. 2d 30, 239 N.E. 2d 25.  Under *Ratner*, I would hold that the BTA "must at least consider and review evidence presented" that would affect true value.  *Ratner*, 23 Ohio St.3d at 62, 23 OBR at 194, 491 N.E. 2d at 642.  Such a review could even lead to the same conclusion as before.  But it appears from the record here that the BTA did not consider the other evidence *at all*, but only relied on the sales price to establish true value.

{¶ 23} I would reverse and remand this case to the BTA to consider the credibility of the evidence of "abnormal economic conditions," *i.e*., the alleged rapid inflation of property values in 1994, and to render a decision based on the evidence presented.  Therefore, I respectfully dissent.

PFEIFER, J., concurs in the foregoing dissenting opinion.

———————————