Cobblestone Square Co., Ltd., Appellant, *v.* Lorain
County Board of Revision et al., Appellees.

[Cite as *Cobblestone Square Co., Ltd. v. Lorain Cty. Bd.
of Revision*, 106 Ohio St.3d 305, 2005-Ohio-5128.]

(No. 2004–0883—Submitted August 23, 2005—Decided October 12, 2005.)

**Per Curiam.**

{¶ 1} Appellant, Cobblestone Square Co., Ltd. ("Cobblestone"), purchased the real property in question in May 2001. The property consists of approximately 8.34 acres and a one-story cement-block building of slightly over 100,000 square feet, which formerly housed a Kmart store.

{¶ 2} For tax year 2001, the Lorain County Auditor valued the real property at $3,417,110. Based on a sale of the property on May 14, 2001, for $5,800,000, the Board of Education of the Elyria City School District ("Elyria") filed a complaint with the Lorain County Board of Revision ("BOR") contending that the property should be valued at $5,800,000. Cobblestone filed a countercomplaint in which it contended that the property should be valued at the value assessed by the auditor. After a hearing, the BOR determined that the property should be valued at $4,000,000. Elyria filed a notice of appeal with the Board of Tax Appeals ("BTA"). However, as a result of this court's decision in *Cleveland Elec. Illum. Co. v. Lake Cty. Bd. of Revision*, 96 Ohio St.3d 165, 2002-Ohio-4033, 772 N.E.2d 1160, the BTA returned the case to the BOR for proper certification of its decision.

{¶ 3} After the BOR's decision was properly certified, both the BOE and Cobblestone filed notices of appeal with the BTA. In their notices of appeal to the BTA, each party contended that the value should be the value set forth in its complaint to the BOR. All parties waived the opportunity to present further evidence to the BTA and agreed to submit the matter based on the record before the BOR. After reviewing the record, the BTA determined the value to be $5,800,000, which we affirm.

{¶ 4} This cause is now before the court upon an appeal as of right.

{¶ 5} At the hearing before the BOR, Cobblestone's sole witness was Steve Edelman, the chief financial officer of Cobblestone's parent company. Edelman

testified that Cobblestone began the development of a shopping center in Sheffield Village in 1998 and 1999 with the expectation that it would be able to attract one or more major retail tenants. However, that expectation did not come to fruition, and most of the major tenants that Cobblestone expected to attract went elsewhere. Kmart was one of the only remaining viable tenants that Cobblestone wanted to attract.

{¶ 6} Kmart, which had a regular Kmart store located on the property at issue, expressed an interest in relocating to Cobblestone's shopping center to open a Super Kmart store. However, Kmart had several years left on the lease for its existing location and would sign a lease to move to Cobblestone's shopping center only if Cobblestone would take over its existing lease with Kmart's landlord, GC Acquisitions. Cobblestone wanted an anchor tenant for its shopping center, and Kmart's terms were not negotiable, so Cobblestone agreed to assume the Kmart lease. The lease assumed by Cobblestone in October 2000 ran until February 2009, with lease payments of $579,000 per year.

{¶ 7} After assuming the Kmart lease, Cobblestone apparently could not find a tenant to sublease the entire building. The lease for the property required GC Acquisitions' permission to alter or subdivide the building. GC Acquisitions denied Cobblestone's request to subdivide the building. However, GC Acquisitions offered to sell the building to Cobblestone for $5,800,000 on a take-it-or-leave-it basis, and Cobblestone accepted.

{¶ 8} Cobblestone's first contention is that the purchase price reflects both the value of the property and the value of release from the lease, and that combined value is not equivalent to the value of the property alone for purposes of determining fair market value. Thus, Cobblestone is contending that the price it paid was the sum of two separate transactions. Assuming, for the purposes of discussion, that Cobbleston's contention is correct, Cobblestone would have had to offer some evidence of the value of the property and the value of the release from the lease. However, a review of the record does not show any evidence submitted by Cobblestone to show any breakdown of the purchase price into these separate values. The BTA specifically found that "Cobblestone has provided no evidence to indicate that the purchase price is not reflective of true value." Therefore, we reject this contention.

{¶ 9} Cobblestone's second contention is that the BTA erred in finding that the purchase was not motivated by economic duress. This court has generally recognized that a recent sale of property in an arm's-length transaction is the best evidence of true value. Cobblestone contends that the sale price was not the best evidence of value because the sale was not an arm's-length sale. In the

syllabus of *Walters v. Knox Cty. Bd. of Revision* (1989), 47 Ohio St.3d 23, 546 N.E.2d 932, we defined the phrase "arm's-length sale" to mean one "characterized by these elements: it is voluntary, *i.e., without compulsion or duress;* it generally takes place in an open market; and the parties act in their own self-interest." (Emphasis added.) Thus, a transaction entered into under economic duress is not an arm's-length transaction.

{¶ 10} In *Lakeside Ave. L.P. v. Cuyahoga Cty. Bd. of Revision* (1996), 75 Ohio St.3d 540, 664 N.E.2d 913, we found that the purchase was the result of economic duress and, therefore, was not the result of an arm's-length transaction. The evidence in *Lakeside* showed that the purchase price was not subject to negotiation, and there was no other acceptable property to which the purchaser could relocate. Without the property, the underlying business in *Lakeside* probably would have filed bankruptcy. Lakeside's asset-based lender would not finance the purchase and prohibited the underlying business from applying its cash or working capital to the purchase of the property. In order to purchase the property, the principals of the underlying business formed Lakeside Avenue Limited Partnership to secure the financing to purchase the property. This court found that Lakeside "never had any real choice but to purchase the property in question." Id. at 549, 664 N.E.2d 913.

{¶ 11} Cobblestone points to what it contends are certain similarities in its case to *Lakeside* and contends that it also was under economic duress when it purchased the Kmart property. The similarities that Cobblestone relies on are that, as in *Lakeside,* the sellers made nonnegotiable offers, and in neither case was there evidence that the property was otherwise exposed to an open market. There is testimony in the record that the owner's offer to Cobblestone was on a take-it-or-leave-it basis. However, there is no evidence in the record as to whether the former owner did or did not expose the property to the open market. In its brief, Cobblestone also claims that it would have become insolvent if it had had to continue to pay the rent. However, a review of the record fails to show any evidence of that claim being made at the hearing. Cobblestone's representative indicated that the purpose of taking over the Kmart property was to mitigate a loss. There is no contention that Cobblestone entered into the assumption of the lease under duress. There is no contention that GC Acquisitions changed the terms of the lease after it was assumed by Cobblestone. At the BOR hearing, Cobblestone's representative affirmed that given the base rent, plus an obligation on a triple-net basis to maintain common areas (an additional $2 to $3 per foot), the building was purchased for the same amount it would have cost to lease. Apparently, after being unsuccessful in leasing the property for several months, rather than continuing to make the payments over the remaining term of the lease, Cobblestone purchased the property. The fact that the owner refused to

waive an existing condition of the lease and permit Cobblestone to subdivide the building does not show economic duress.

{¶ 12} The evidence in this case shows that Cobblestone freely entered into a business arrangement so that Kmart would open a superstore in Cobblestone's new shopping center. There is no evidence in the record as to how much rent Kmart is paying at the new shopping center. Thus, there is no evidence of the overall economics of the business deal made by Cobblestone.

{¶ 13} Cobblestone had to know when it voluntarily took over the Kmart lease that it was assuming the risk of not being able to sublease the property and having to make the lease payments. After several months with no tenant for the Kmart property, Cobblestone apparently determined that the purchase of the property made more economic sense than continuing to pay the rent. Cobblestone made several business judgments that may or may not have been good judgments, but we do not find that Cobblestone has demonstrated that its purchase of the Kmart property was made under economic duress.

{¶ 14} Finally, Cobblestone contends that the BTA erred in finding that it was not acting under economic duress when Kmart made the assumption of its lease a nonnegotiable condition of opening a superstore in Cobblestone's new shopping center. Cobblestone's assumption of the Kmart lease is one step removed from the purchase of the Kmart property, which is the subject of this case, and is not relevant to whether the purchase of the Kmart was made under economic duress. The BTA found that "there is nothing in the record to establish that Cobblestone needed this one particular retailer, i.e., K-mart, to make the shopping center viable." Thus, even if the assumption of the lease were relevant to value in this case, there is no evidence that Cobblestone was compelled to take over the Kmart lease.

{¶ 15} For all of the reasons set forth above, we find that the decision of the BTA was reasonable and lawful and affirm it.

Decision affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs in judgment only.

---

### PFEIFER, J., concurring in judgment only.

{¶ 16} "Although the sale price is the 'best evidence' of true value of real property for tax purposes, it is not the only evidence. A review of independent appraisals based upon factors other than the sale price is appropriate where it is shown that the sale price does not reflect true value. (*Columbus Bd. of Edn. v.*

*Fountain Square Assoc., Ltd.* [1984], 9 Ohio St.3d 218, 219 [9 OBR 528, 459 N.E.2d 894], construed.)" *Ratner v. Stark Cty. Bd. of Revision* (1986), 23 Ohio St.3d 59, 23 OBR 192, 491 N.E.2d 680, syllabus.

{¶ 17} In this case, Cobblestone Square Co., Ltd. purchased an empty building for the value of a fully leased building. Cobblestone did this to further one of its other business ventures. Whether that was a good decision is questionable. What is not questionable is that the empty building Cobblestone purchased would not have been worth that price to anyone but Cobblestone. Unlike the majority, I believe that Cobblestone acted under economic duress. Therefore, the price it paid does not reflect true value and the rebuttable presumption that sales price is the best evidence of value does not apply. Cobblestone did not, however, satisfy its burden of proving true value by, for instance, obtaining an independent appraisal. See *Ratner* at syllabus. Because of this omission, Cobblestone cannot prevail. Accordingly, I concur in the judgment.

---

Martin Hughes & Associates, Martin J. Hughes III, and Jackie Lynn Hager, for appellant.

Armstrong, Mitchell, Damiani & Zaccagnini and Timothy J. Armstrong, for appellee Board of Education of Elyria City School District.