OPINION *Page 2 
{¶ 1} Buck Warehouses, Inc. (hereinafter "Buck"), appeals from the judgment of the Common Pleas Court of Clark County which affirmed the decision of the Board of Revision of Clark County regarding the valuation of certain real estate for taxation purposes.
 {¶ 2} On April 29, 2004, Buck purchased the Cooper Cameron Industries building on Sheridan Avenue in Springfield for the sum of Three-hundred Thousand Dollars ($300,000). The real estate purchase included thirty-one (31) parcels amounting to approximately twenty acres of land and all the personalty found inside the building. The original listing price for the property was One Million, Eight-Hundred Thousand Dollars ($1,800,000). The building had been vacant for a couple of years prior to the sale to the Appellant.
 {¶ 3} On March 24, 2005 Buck filed a complaint with the Clark County Board of Revision alleging that the true value of the real estate was One-Hundred Seventy-Nine Thousand, Six-Hundred Dollars ($179,600) because the Three-Hundred Thousand Dollar ($300,000) purchase price included personal property having a fair-market value of One-Hundred Twenty Thousand, Four-Hundred Dollars ($120,400). After conducting a hearing, the Board of Revision reduced the true value of the Cooper Cameron building situated on one parcel of land from Two-Million, One-Hundred Fifty-Eight Thousand, Four-Hundred Ninety Dollars ($2,158,490) to Four-Hundred Thirty-Eight Thousand, Thirty Dollars ($438,030) but made no further reduction to the remaining parcels of real estate. The Board provided no explanation for the value it attributed to the real estate. *Page 3 
 {¶ 4} Douglas Cox, a real estate broker, testified at the Board of Revision hearing that he was the listing agent to sell the Cooper Cameron property. He testified the purchase agreement did not set forth a separate price for the real estate and the personal property inside the building. Cox testified that in his opinion the purchase was made at arms-length. He said it was relevant that the building contained five-hundred eighty thousand (580,000) square feet, and there were no buyers willing to take on that many square feet and make use of it. He stated he believed the fair-market value of the property was the purchase price.
 {¶ 5} On cross-examination, Cox indicated that the original agreement signed in October 2003 provided the purchase price would be Four-Hundred Fifty Thousand Dollars ($450,000), but because an environmental study indicated that the building's sprinkler system needed repair, the price was reduced to $300,000. Cox admitted the real estate tax conveyance forms listed no breakdown for personal property included, and there was no audit for personal property prior to the sale. (T. 19).
 {¶ 6} On redirect examination, Cox stated he had no opinion whether the repaired sprinkler system would increase the value of the property. He indicated the market rate for warehousing space in Springfield is from One Dollar ($1) to Three Dollars ($3) per square foot, and the Cooper Cameron building would fit in the low range for warehouse space.
 {¶ 7} Harry Denune testified he was involved in the purchase of the property. He testified he had been engaged in the business of buying and selling personal property including scrap metal for over sixty (60) years. Denune testified he examined the contents of the Cooper Cameron building and determined he could sell its contents *Page 4 
for the $300,000 Buck was paying for the property. Denune said $120,000 would be a very conservative value to place on the personal property because he did not even include in the $120,000 estimate fifty-thousand (50,000) pounds of steel, six thousand (6,000) pounds of aluminum metal plates, window air conditioners and miscellaneous office equipment. In addition, Denune said there were transformers worth at least Fifty-Thousand Dollars ($50,000) and twenty-thousand (20,000) pounds of copper he intends to remove from the building. (T. 27). Finally, Denune said he had no luck renting part of the building because of its location. He testified that industrial real estate in Springfield is not worth much. He testified that "little buildings sell good, but large empty factory buildings are not very saleable in Springfield." Denune said the Fifty-Six Thousand Dollars ($56,000) spent to improve the sprinkler system probably did not increase the value of the building because there are a lot of empty manufacturing buildings on the market. (T. 32). Denune said Buck paid Fifty-Two Cents (52 cents) a square foot for the building, but he would lease it at Fifty-Cents (50 cents) a square foot if he could find anyone interested. (T. 38). He indicated the building's roof leaks and it would cost a fortune to heat the building.
 {¶ 8} In affirming the Board of Revision decision, the trial court noted that there was no listing of any money paid for personal property on the real property conveyance statement of value form. Further, the court stated it deferred to the Board's concern about the purchase being an arms-length transaction. The court confirmed the valuation of the real estate to be $438,030.
 {¶ 9} In its first assignment of error, Buck contends the judgment of the trial court is against the manifest weight of the evidence. In a second related assignment, *Page 5 
Buck contends that the trial court erred in its interpretation of the auditor's conveyance form. Buck argues that it presented undisputed evidence that the purchase of the Cooper Cameron property was an "arms length" transaction and that the property had been on the market for two years without any buyers. Buck argues that although the purchase agreement did not specifically allocate a value to the personal property inside the Cooper Cameron building, Harry Denune testified the personal property was included in the purchase price and he figured "I could sell the personal property for what we paid for the building." (T. 24). Buck notes that Denune offered his expert opinion that the personal property was worth at a minimum $120,400 and, thus, the remaining real estate was only worth $179,600.
 {¶ 10} Clark County argues that the most significant evidence was that Buck did not list any amount paid for personal property on the real property conveyance fee form. Also, Clark County argues these are "inductions" that the sale of the property to Buck was not an arms length transaction.
 {¶ 11} R.C. 5713.03 provides in pertinent part that, "the county auditor, from the best sources of information available, shall determine, as nearly as practicable, the true value of each separate tract, lot, or parcel of real property and of buildings, structures, and improvements located thereon. . .In determining the true value of any tract, lot or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arms length sale between a willing seller and willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor shall consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes."
 {¶ 12} In Ratner v. Stark City Bd of Revision (1986),23 Ohio St.3d 59, the *Page 6 
supreme court held that although the sale price is the "best evidence" of true value of real property for tax purposes, it is not the only evidence. The court held a review of independent appraisals based upon factors other than the sale price is appropriate where it is shown that the sale price does not reflect true value.
 {¶ 13} In Walters v. Knox City Bd. of Revision (1989),47 Ohio St.3d 23, the supreme court defined "arms-length sale" for R.C. 5713.03
purposes as a voluntary sale without compulsion or duress, that generally takes place in an open market where the parties act in their own self-interest. The court held that the Board of Revision failed to present evidence to rebut the presumption that the purchase price in a recent arms-length sale is presumed to represent the true value of the property.
 {¶ 14} In this matter, the Board of Revision presented no evidence to rebut Buck's evidence that it purchased the property for $300,000 in an arms-length transaction. Although attorney Robert Morrow opined that the sale of the property had all the makings of a distress sale, no evidence was presented to support that opinion. On the other hand, Buck's contention that the true value of the property is $179,600 is refuted by evidence that no allocation was made in the purchase price for the value of the personal property. Also, Buck submitted a property conveyance fee statement of value to the county auditor which failed to state some portion of the purchase price was for personal property purchased therein, though it would be in its interest to do so. Accordingly, we find the trial court erred in affirming the Board of Revision's determination that the true value of the real estate is $438,030. There is evidence in the record to support the presumed value of the property to be its purchase price of $300,000. The judgment of the trial court is Reversed and Remanded to the trial court *Page 7 
to enter a judgment in conformance with this opinion.
 WOLFF, P.J., and DONOVAN, J., concur. *Page 1