[Cite as *Bahorek v. Franklin Cty. Bd. of Revision*, 2026-Ohio-1524.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Stanley J. Bahorek, | : | |
| Appellant-Appellant, | : | No. 25AP-165 |
| | | (BTA No. 2023-1438) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Franklin County Board of Revision et al., | : | |
| Appellees-Appellees. | : | |

D E C I S I O N

Rendered on April 28, 2026

**On brief:** *Rich & Gillis Law Group, LLC*, and *Mark H. Gillis*, for appellant.

**On brief:** *Sleggs, Danzinger & Gill Co., LPA, Todd W. Sleggs*, and *Elizabeth Grooms Taylor*, for appellee Pizzuti South Grant Apartments, LLC.

APPEAL from the Ohio Board of Tax Appeals

LELAND, J.

{¶ 1} Appellant, Stanley J. Bahorek, appeals a decision and order of the Board of Tax Appeals ("BTA") that vacated the decision of the Franklin County Board of Revision ("BOR") and remanded the matter to the BOR to dismiss Bahorek's complaint for lack of jurisdiction. For the following reasons, we reverse and vacate the BTA's decision and order.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} In Ohio, real property taxes are levied on the true value of land and improvements.[1] R.C. 5709.01 and 5713.03. "True value" is market value, or the amount for which property would sell on the open market by a willing seller to a willing buyer. *Rover*

---

[1] The exception to this true value requirement is agriculture property, which is not at issue in this appeal.

*Pipeline, L.L.C. v. Harris*, 2025-Ohio-2806, ¶ 29. The taxable value of real property is 35 percent of its true value. Adm.Code 5703-25-05(B).

{¶ 3} Each taxing district may levy up to ten mills of tax, equal to one percent of a property's assessed value, without voter approval. All subsequent additional levies, called outside or voted millage, require a majority vote. Voted millage consists of fixed-rate levies, which are taxes of a specific rate, and fixed-sum levies, which are taxes of a specific amount of money.

{¶ 4} A tax reduction factor applies to fixed-rate levies to reduce property tax increases resulting from rising property values. R.C. 319.301. The tax reduction factor is a percentage by which a levy's collections are reduced to ensure that "carryover property"— property that was taxable in the prior year in the same class of property—generates the same amount of tax revenue as it did the prior year. R.C. 319.301(B)(2). In short, through use of the tax reduction factor, the same number of dollars are produced each year from the same amount of properties. Due to the application of the tax reduction factor, an effective tax rate must be calculated for each fixed-rate levy every tax year.

{¶ 5} For each tax year, the tax rates for fixed-rate and fixed-sum levies are calculated based on the property values of the entire taxing district. R.C. 319.301 (fixed-rate levies), 5705.34 (fixed-sum levies). Importantly, if the total property values in the taxing district increase, then the tax rates will decrease. If the total property values of the taxing district decrease, then the tax rates will increase, although the tax rate cannot exceed the voted amount (for fixed-rate levies).

{¶ 6} Given this relationship between property values and tax rates, if major properties are undervalued, then smaller property owners will shoulder a higher tax burden. Thus, property owners have a powerful incentive to ensure none of their neighbors' properties are undervalued. Taking advantage of this incentive, the General Assembly gave property owners the right to challenge the valuation of their neighbors' real property over a hundred years ago, in 1917. *See* G.C. 5609 (predecessor to R.C. 5715.19), enacted in S.B. No. 177, 107 Ohio Laws 29, 43 ("Complaint against any valuation or assessment made within a current year, may be filed on or before the time limited for payment of taxes for the first half year. Any taxpayer may file such complaint as to the valuation or assessment of his own or another's property[.]"). Although the text of the statute changed somewhat over the ensuing decades, the General Assembly consistently preserved a property owner's

right to file a complaint contesting the valuation of another's real property. Prior to the legislative change at issue in this case, R.C. 5715.19—the statute granting property owners the right to challenge another property's valuation—provided:

> (1) Subject to division (A)(2) of this section, a complaint against any of the following determinations for the current tax year shall be filed with the county auditor on or before the thirty-first day of March of the ensuing tax year or the date of closing of the collection for the first half of real and public utility property taxes for the current tax year, whichever is later:
>
> . . .
>
> (d) The determination of the total valuation or assessment of any parcel that appears on the tax list, except parcels assessed by the tax commissioner pursuant to section 5727.06 of the Revised Code[.]
>
> . . .
>
> Any person owning taxable real property in the county or in a taxing district with territory in the county . . . may file such a complaint regarding any such determination affecting any real property in the county, except that a person owning taxable real property in another county may file such a complaint only with regard to any such determination affecting real property in the county that is located in the same taxing district as that person's real property is located. The county auditor shall present to the county board of revision all complaints filed with the auditor.

Former R.C. 5715.19(A)(1), (d), and (f), modified by 2022 Am.Sub.H.B. No. 126.

{¶ 7} The General Assembly imposed substantive restrictions on property owners' ability to challenge the undervaluation of other properties in Am.Sub.H.B. No. 126, which became effective on July 21, 2022. Subsequent to the enactment of Am.Sub.H.B. No. 126, R.C. 5715.19 included the following additional language:

> (6) The legislative authority of a subdivision, the mayor of a municipal corporation, or a third party complainant shall not file an original complaint with respect to property the subdivision or complainant does not own or lease unless both of the following conditions are met:
>
> (a) If the complaint is based on a determination described in division (A)(1)(d) or (e) of this section, the property was (i) sold in an arm's length transaction, as described in section 5713.03

of the Revised Code, before, but not after, the tax lien date for the tax year for which the complaint is to be filed, and (ii) the sale price exceeds the true value of the property appearing on the tax list for that tax year by both ten per cent and the amount of the filing threshold determined under division (J) of this section;

(b) If the complaint is filed by a legislative authority or mayor, the legislative authority or, in the case of a mayor, the legislative authority of the municipal corporation, first adopts a resolution authorizing the filing of the original complaint at a public meeting of the legislative authority.

R.C. 5715.19(A)(6)(a) and (b).[2]  As used in R.C. 5715.19, "third party complainant" means "a complainant other than the property owner, the owner's spouse, a tenant authorized to file an original complaint, or any person acting on behalf of a property owner." R.C. 5715.19(A).    The General Assembly set the filing threshold referenced in R.C. 5715.19(A)(6)(a)(ii) at $500,000 for 2022.  R.C. 5715.19(J).

{¶ 8}    The Ohio Legislative Service Commission warned the General Assembly that the changes to R.C. 5715.19 would result in lower property values and higher tax rates.  The Final Fiscal Note & Local Impact Statement regarding Am.Sub.H.B. No. 126 stated:

The effect on tax revenue of these lower valuations with the bill would be partly offset by smaller tax reduction factors, resulting in higher effective tax rates. . . . The tax rates on levies to raise fixed amounts of money, such as bond levies, would be adjusted higher than under current law to offset the effect of the lower values with the bill.

Ohio Legislative Service Commission, Final Fiscal Note & Local Impact Statement to Am.Sub.H.B.        No.        126,        at        1-2        (Apr.        22,        2022), https://www.legislature.ohio.gov/download?key=18963  (accessed   Apr.   23,   2026) [https://perma.cc/3U7B-XMLX].  Crucially, the Ohio Legislative Service Commission then reported to the General Assembly, "These adjustments will tend to shift tax payment obligations to taxpayers other than those whose taxes could go up as a result of complaints by school districts and other[s] . . . under current law." *Id.* at 2; *accord* BTA Hearing Record Tr. at 60-62 (explaining how undervaluation of a property for a particular tax year

---

[2] We recognize that the General Assembly has amended R.C. 5715.19(A)(6) since Am.Sub.H.B. No. 126. *See* 2025 Am.Sub.H.B. No. 96. Those amendments, however, are not at issue in this appeal, so we do not refer to them.

irreversibly shifts the tax burden to other properties in the same taxing district). Under the then-current law, businesses' property taxes went up when school districts and other property owners complained about property valuations. (Stipulations of Fact & Exs., Ex. 22 (recognizing that the "vast majority" of the undervaluation complaints filed with county boards of revision "are made against businesses owning or leasing commercial and industrial real property").) Thus, once in operation, Am.Sub.H.B. No. 126 would decrease commercial property owners' taxes at the expense of ordinary Ohioans.

{¶ 9} In March 2023, Bahorek, an owner of real property in Franklin County, filed complaints with the BOR against appellee, Pizzuti South Grant Apartments, L.L.C. ("Pizzuti"). The Board of Education for the Columbus City Schools filed a counter-complaint.

{¶ 10} In the complaint, Bahorek sought an increase in the 2022 value of the property Pizzutti owned from $17,178,700 to $41,270,000 based on the size, location, and market analysis of similar properties. The complaint also asserted that the requirements of R.C. 5715.19(A)(6)(a) violated the uniform rule requirement of Article XII, Section 2 of the Ohio Constitution, the Due Process and Equal Protection Clauses of the United States Constitution, and the Due Course of Law and Equal Protection Clauses of the Ohio Constitution.

{¶ 11} The BOR issued a decision increasing the appraised value of Pizzuti's property for tax year 2022 to $25,650,000. Pizzuti appealed the BOR's decision to the BTA.

{¶ 12} On appeal, the BTA allowed the parties to introduce evidence relevant to determining the constitutionality of R.C. 5715.19(A)(6)(a). In a decision and order issued January 16, 2025, the BTA concluded that the BOR lacked jurisdiction over Bahorek's complaint because he did not allege the occurrence of a property sale that met the requirements of R.C. 5715.19(A)(6)(a). The BTA, therefore, vacated the BOR's decision and remanded the matter to the BOR with instructions to dismiss the underlying complaint.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Bahorek now appeals the BTA's decision and order to this court, and he assigns the following errors:

> 1. The Decision is unreasonable and unlawful because the BTA relied upon revisions to R.C. 5715.19(A)(6)(a) through 2022 Am. Sub. H.B. 126 ("H.B. 126") that violate both the U.S. Constitution and the Ohio Constitution.

2. Facially, and as applied to Appellant, the revision to R.C. 5715.19(A)(6)(a) to limit the filing of a board of revision complaint only upon property subject to an arm's-length sale (the "Arm's-Length Sale Restriction") violates the Uniform Rule mandated by Article XII, Section 2 of the Ohio Constitution.

3. Facially, and as applied to Appellant, the Arm's-Length Sale Restriction violates Appellant's right to equal protection of the laws as guaranteed by the 14th Amendment of the United States Constitution and Article I, Section 2 of the Ohio Constitution.

4. Facially, and as applied to Appellant, the Arm's Length Sale Restriction violates Appellant's right to due process guaranteed by the 14th Amendment of the United States Constitution and his right to due course of law guaranteed by Article I, Section 16 of the Ohio Constitution.

## III. ANALYSIS

### A. CONSTITUTIONALITY OF R.C. 5715.19(A)(6)(a) UNDER THE UNIFORM RULE

{¶ 14} By his first and second assignments of error, Bahorek argues that R.C. 5715.19(A)(6)(a) violates the constitutional guarantee of taxation uniformity in Article XII, Section 2 of the Ohio Constitution. We agree.

{¶ 15} A court reviews the constitutionality of a statute under the de novo standard of review. *Kennedy v. W. Reserve Senior Care*, 2024-Ohio-5565, ¶ 8. The review of a statute's constitutionality begins with the presumption that the statute is constitutional. *Id.*; *Wilson v. Kasich*, 2012-Ohio-5367, ¶ 18. This presumption, however, is rebuttable. *Kennedy* at ¶ 8; *Wilson* at ¶ 18. The party contesting the validity of the statute rebuts the presumption by establishing beyond a reasonable doubt that the legislation and constitutional provisions are incompatible. *Zeigler v. Zumbar*, 2011-Ohio-2939, ¶ 24. When incompatibility is clear, it is the duty of the court to declare the statute unconstitutional. *State v. Mole*, 2016-Ohio-5124, ¶ 11 (plurality).

{¶ 16} Since 1851, Ohio's Constitution has mandated the taxation of real property by "uniform rule." Ohio Const., art. XII, § 2 (1851) ("Laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stock, joint stock companies, or otherwise; and also all real and personal property according to its true value in money[.]"). As

amended in 1929, Article XII, Section 2 of the Ohio Constitution now reads, "Land and improvements thereon shall be taxed by uniform rule according to value."

{¶ 17} The Supreme Court of Ohio first addressed what taxation by uniform rule meant in 1853, stating:

> No language in the constitution, perhaps, is more important than ["taxing by uniform rule"]; and to accomplish the beneficial purposes intended, it is essential that [these words] should be truly interpreted, and correctly applied. "*Taxing*" is required to be "*by a uniform rule;*" that is, by one and the same unvarying standard. Taxing by a uniform rule requires uniformity, not only in the *rate* of taxation, but also uniformity in the *mode* of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation; and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation.

(Emphasis in original.) *Exchange Bank v. Hines*, 3 Ohio St. 1, 15 (1853). Thus, in *Hines*, the Supreme Court joined other states that have uniform rules in their state constitutions in interpreting the Ohio's uniform rule to require equal treatment in the taxation process. As the Supreme Court of Virginia held, "[u]niformity is . . . the promise of equality of treatment among members of a tax class during the taxation process[.]" *Internatl. Paper Co. v. Isle of Wright*, 299 Va. 150, 178 (2020). Likewise, the Supreme Court of Wisconsin concluded:

> "The rule of taxation shall be uniform," that is to say, the course or mode of proceeding in levying or laying taxes shall be uniform; it shall in all cases be alike. The act of laying a tax on property consists of several distinct steps, such as the assessment or fixing of its value, the establishing of the rate, etc.; and in order to have the rule or course of proceeding uniform, each step taken must be uniform. The valuation must be uniform, the rate must be uniform. Thus uniformity in such a proceeding becomes equality; and there can be no uniform rule which is not at the same time an equal rule, operating alike upon all the taxable property throughout the territorial limits of the state, municipality or local subdivision of the government, within and for which the tax is to be raised.

*Knowlton v. Bd. of Supervisors*, 9 Wis. 410, 420-421 (1859).

{¶ 18} The Supreme Court of Ohio later considered the uniform rule in the *Park Investment* cases, a series of mandamus cases in which the Supreme Court held that

uniform rule requires equal and uniform standards for the determination of the taxable value and assessment of real property. *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410 (1964); *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 16 Ohio St.2d 85 (1968); *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 26 Ohio St.2d 161 (1971); *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 32 Ohio St.2d 28 (1972). Echoing *Hines*, the Supreme Court stated that taxation by uniform rule mandates uniformity in the mode of assessment. *Park Invest. Co.*, 26 Ohio St.2d at 164. Moreover, under the uniform rule, real property must be taxed on the basis of the same percentage of true value. *Id.* at 167. The Supreme Court was not satisfied that the General Assembly met the requirement of the uniform rule until it passed legislation in 1972 approving a six-year cycle to reappraise all property in Ohio based on true value. *Park Invest. Co.*, 32 Ohio St.2d at 32. As shown by the Supreme Court's holding in the final *Park Investment* case, compliance with the uniform rule requires regular, accurate appraisals because such appraisals ensure that all property is appraised at its true value and assessed at a uniform percentage of that value.

{¶ 19} The six-year cycle adopted in the 1972 bill mirrors Ohio's current sexennial reappraisal, the statutorily mandated practice wherein each county auditor appraises the real property in the county every six years to ensure that property is being assessed at 35 percent of its fair market value. R.C. 5713.01(B), 5713.03, 5715.24, and 5715.33; Adm.Code 5703-25-06 and 5703-25-16(A). In the third year of that cycle, the auditor conducts a reassessment, known as the triennial update. R.C. 5713.01(B), 5715.24, and 5715.33; Adm.Code 5703-25-06 and 5703-25-16(B). Additionally, the auditor may revalue any real property in the county "at any time" when the auditor finds the true or taxable value of the property has changed. R.C. 5713.01(B).

{¶ 20} Therefore, under Ohio's tax system, the duty to value real property primarily falls on county auditors. However, Ohio's tax system has historically also relied on owners of other properties within the same taxing district and other governmental entities, such as boards of education, to police real property values. R.C. 5715.19(A). Pursuant to R.C. 5715.19(A)(1), those entities may file complaints challenging the undervaluation of a parcel with the auditor, who then must present the complaint to the county board of revision. The county board of revision may then determine a new true and taxable value for the property at issue. R.C. 5715.11.

{¶ 21} Ohio courts have concluded that the current system of sexennial appraisals and triennial updates, supplemented by periodic auditor and board of revision revaluations, complies with the constitutional mandate of taxation by uniform rule. *Reynoldsburg Bd. of Edn. v. Licking Cty. Bd. of Revision*, 1997-Ohio-185; *Meyer v. Cuyahoga Bd. of Revision*, 58 Ohio St.2d 328 (1979); *Spirit Realty, L.P. v. Warren Cty. Bd. of Revision*, 2024-Ohio-4734 (12th Dist.); *J.C. Penney Properties, Inc. v. Franklin Cty. Bd. of Revision*, 1992 Ohio App. LEXIS 4583 (10th Dist. Aug. 27, 1992). The Supreme Court of Ohio has held:

> The system of taxation unfortunately will always have some inequality and nonuniformity attendant with such governmental function. It seems that perfect equality in taxation would be utopian, but yet, as a practicality, unattainable. We must satisfy ourselves with a principle of reason that practical equality is the standard to be applied in these matters, and this standard is satisfied when the tax system is free of systematic and intentional departures from this principle.

*Meyer* at 335. In other words, courts accept that perfect uniformity and equality in property valuation processes is not an obtainable standard. Consequently, property assessment practices must clear a lower bar to satisfy the uniform rule: they cannot systematically and intentionally treat properties differently.

{¶ 22} We, therefore, review the constitutionality of R.C. 5715.19(A)(6) mindful that "[t]he 'uniform rule' requirement of Section 2, Article XII, operates to assure uniformity in valuation of real property[.]" *State ex rel. Swetland v. Kinney*, 62 Ohio St.2d 23, 29 (1980). But we must also remain cognizant that the uniform rule's standards are met "when the tax system is free of systematic and intentional departures" from uniform treatment of real property. *Meyer* at 335.

{¶ 23} R.C. 5715.19(A)(6) places two conditions on the filing of a valuation complaint. At issue in this appeal is the first condition, which prohibits "the legislative authority of a subdivision, the mayor of a municipal corporation, or a third party complainant" from filing "an original complaint" regarding property the complainant does not own unless:

> (a) If the complaint is based on a determination described in division (A)(1)(d) or (e) of this section, the property was (i) sold in an arm's length transaction, as described in section 5713.03

> of the Revised Code, before, but not after, the tax lien date for the tax year for which the complaint is to filed, and (ii) the sale price exceeds the true value of the property appearing on the tax list for that tax year by both ten per cent and the amount of the filing threshold determined under division (J) of this section[.]

Thus, this condition—which, actually, amounts to three conditions—precludes the filing of an undervaluation complaint unless (1) the property is sold in an arm's length transaction, (2) the arm's length transaction occurs before the relevant tax lien date, and (3) the sale price exceeds the true value of the property on the tax list by both 10 percent and, for tax year 2022, $500,000.

{¶ 24} Quite unescapably, these conditions discriminate between the type of real properties subject to undervaluation complaints. R.C. 5715.19(A)(6)(a) precludes the filing of an undervaluation complaint unless the property meets certain criteria. Depending on characteristics intrinsic to the particular property, some real properties obtain a safe harbor from undervaluation complaints, some do not. Only those properties that fit the criteria are at jeopardy for an increase in valuation.

{¶ 25} As the Supreme Court of Ohio warned in *Hines*, when valuation rules do not operate uniformly, the result is inequality in the burden in taxation. *Hines*, 3 Ohio St. at 15. Discrimination amongst property subject to BOR complaints will allow certain properties to remain undervalued, resulting in overall lower taxable values. Ohio Legislative Service Commission, Final Fiscal Note & Local Impact Statement to Am.Sub.H.B. No. 126, at 1-2 (Apr. 22, 2022), https://www.legislature.ohio.gov/download?key=18963 (accessed Apr. 23, 2026) [https://perma.cc/3U7B-XMLX]. Lower taxable values cause higher effective tax rates for fixed-rate levies and higher tax rates for fixed-sum levies. These higher rates will be especially onerous for average Ohioans. The conditions on filing BOR complaints "will tend to shift tax payment obligations to taxpayers other than those whose taxes could go up as a result of complaints by school districts and other[s] . . . under current law." *Id*. at 2. Consequently, ordinary Ohioans—who generally were not the subject of BOR complaints—will bear the burden of paying the taxes that commercial property owners will avoid by keeping their properties undervalued.

{¶ 26} Imposing the R.C. 5715.19(A)(6)(a) conditions on the filing of an undervaluation complaint blatantly treats properties differently; it exposes some properties

to a correction in valuation but allows others to remain undervalued. R.C. 5715.19(A)(6)(a), therefore, is a systematic and intentional departure from the uniform valuation of real property. As a result, R.C. 5715.19(A)(6)(a) violates the uniform rule and is unconstitutional under Article XII, Section 2 of the Ohio Constitution. Accordingly, we sustain Bahorek's first and second assignments of error.

{¶ 27} Our resolution of Bahorek's first and second assignments of error renders his third and fourth assignments of error moot. Consequently, we do not address those assignments of error.

## B. REMEDY

{¶ 28} Having found R.C. 5715.19(A)(6)(a) unconstitutional, we now must determine the appropriate remedy. Bahorek argues that we should sever the unconstitutional portion of R.C. 5715.19(A)(6) from the remainder of the statute. We agree.

{¶ 29} When only a portion of a statute is invalid, a court may sever that portion if "the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application[.]" R.C. 1.50. Consistent with this law, a court must apply a three-part test to determine whether it can sever an invalid portion of a statute, or it must strike down the entire law:

> " '(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?' "

*State v. Noling*, 2016-Ohio-8252, ¶ 34, quoting *Geiger v. Geiger*, 117 Ohio St. 451, 466 (1927), quoting *State v. Bickford*, 28 N.D. 36 (1913). A court may sever the unconstitutional portion of the statute when the answer to the first question is "yes," and the answer to the second and third questions is "no." *Id.*

{¶ 30} As we stated above, the entirety of R.C. 5715.19(A)(6) states:

> (6) The legislative authority of a subdivision, the mayor of a municipal corporation, or a third party complainant shall not file an original complaint with respect to property the subdivision or complainant does not own or lease unless both of the following conditions are met:

(a) If the complaint is based on a determination described in division (A)(1)(d) or (e) of this section, the property was (i) sold in an arm's length transaction, as described in section 5713.03 of the Revised Code, before, but not after, the tax lien date for the tax year for which the complaint is to be filed, and (ii) the sale price exceeds the true value of the property appearing on the tax list for that tax year by both ten per cent and the amount of the filing threshold determined under division (J) of this section;

(b) If the complaint is filed by a legislative authority or mayor, the legislative authority or, in the case of a mayor, the legislative authority of the municipal corporation, first adopts a resolution authorizing the filing of the original complaint at a public meeting of the legislative authority.

{¶ 31} If we remove subdivision R.C. 5715.19(A)(6)(a) and the words "both of" from subdivision R.C. 5715.19(A)(6), we excise the unconstitutional portion of the statute. We leave standing subdivision R.C. 5715.19(A)(6)(b), the condition requiring a resolution by a legislative authority prior to the filing of a complaint. Our revision of this language results in a comprehensible statute. We, consequently, determine that the answer to the first *Geiger* question is "yes."

{¶ 32} As to the second question, we conclude that R.C. 5715.19(A)(6)(a) is not so connected with the general scope of the whole as to make it impossible to give effect to the apparent intent of the General Assembly if that subdivision is severed. The intent of Am.Sub.H.B. No. 126, as emphasized by the testimony of the special interest groups in favor of it and the General Assembly debate, is to achieve transparency and accountability in the valuation complaint process. (Stipulations of Fact & Exs., Exs. 2, 5, 8, 9, 11, 12, 14, 15, 18, 20.) As the County Auditors' Association of Ohio testified to the Ohio Senate Ways and Means Committee, "The purpose of this legislation is to require notice and passage of a resolution before the filing of a Board of Revision complaint by a school district or other legislative authority. This bill will create an extra layer of transparency and accountability in the property value complaint process[.]" (Stipulations of Fact & Exs., Ex. 19.) The General Assembly included the notification and resolution requirements so property owners could communicate with legislative authorities prior to the filing of a complaint, and legislative authorities could then debate the wisdom of filing the complaint.

{¶ 33} The portions we sever from R.C. 5715.19(A)(6) do not affect the provisions of Am.Sub.H.B. No. 126 that require notification and adoption of a resolution before the filing of a valuation complaint. School districts and other legislative authorities must still provide property owners with the transparency and accountability the General Assembly intended them to receive under the statute. Therefore, we determine the answer to the second *Geiger* question is "no."

{¶ 34} The third question asks whether it is necessary to insert any words or terms to give effect to the constitutional part of the statute. We recognize that the severance here does not result in a perfectly drafted statute, but it does not require the addition of any words. We thus determine that the answer to the third *Geiger* question is "no."

{¶ 35} Having found the *Geiger* test met, we excise subdivision R.C. 5715.19(A)(6)(a) in its entirety and the words "both of" from subdivision R.C. 5715.19(A)(6). With this severance, R.C. 5715.19 is rendered constitutional.

## C. CERTIFICATION OF CONFLICT

{¶ 36} As a final matter, we certify to the Supreme Court of Ohio a conflict between our decision and the decision of the Fifth District Court of Appeals in *Gillis v. Delaware Cty. Bd. of Revision*, 2024-Ohio-5669 (5th Dist.), regarding the constitutionality of R.C. 5715.19(A)(6)(a). Article IV, Section 3(B)(4) of the Ohio Constitution vests in the courts of appeals the power to "certify the record of [a] case to the supreme court for review and final determination" whenever "the judges . . . find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state[.]" We thus certify to the Supreme Court of Ohio:

> Does R.C. 5715.19(A)(6)(a) as adopted by Am.Sub.H.B. No. 126
> violate the uniform rule requirement of Article XII, Section 2 of
> the Ohio Constitution?

## IV. CONCLUSION

{¶ 37} For the foregoing reasons, we sustain Bahorek's first and second assignments of error, which moots Bahorek's third and fourth assignments of error. We reverse and vacate the BTA's decision and order.

*Judgment reversed and vacated.*

JAMISON and DINGUS, JJ., concur.

―――――――――――