[Cite as *Bahorek v. Franklin Cty. Bd. of Revision*, 2026-Ohio-1526.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | No. 25AP-10 |
| | | (BTA No. 2023-1601) |
| Stanley J. Bahorek, | : | No. 25AP-11 |
| | | (BTA No. 2023-1644) |
| Appellant-Appellant, | : | No. 25AP-12 |
| | | (BTA No. 2023-1671) |
| v. | : | No. 25AP-13 |
| | | (BTA No. 2024-310) |
| Franklin County Board of Revision et al., | : | No. 25AP-14 |
| | | (BTA No. 2023-1638) |
| Appellees-Appellees. | : | No. 25AP-15 |
| | | (BTA No. 2023-1683) |
| | : | No. 25AP-16 |
| | | (BTA No. 2023-1670) |
| | : | No. 25AP-17 |
| | | (BTA No. 2023-1749) |
| | : | No. 25AP-18 |
| | | (BTA No. 2023-1676) |
| | : | No. 25AP-19 |
| | | (BTA No. 2023-1613) |
| | : | No. 25AP-20 |
| | | (BTA No. 2023-1617) |
| | : | No. 25AP-21 |
| | | (BTA No. 2023-1618) |
| | : | No. 25AP-22 |
| | | (BTA No. 2023-1622) |
| | : | No. 25AP-23 |
| | | (BTA No. 2023-1628) |
| | : | No. 25AP-24 |
| | | (BTA No. 2023-1630) |
| | : | No. 25AP-25 |
| | | (BTA No. 2023-1633) |
| | : | No. 25AP-26 |
| | | (BTA No. 2023-1634) |
| | : | No. 25AP-27 |
| | | (BTA No. 2023-1637) |
| | : | No. 25AP-28 |
| | | (BTA No. 2023-1667) |
| | : | No. 25AP-29 |
| | | (BTA No. 2023-1680) |
| | : | No. 25AP-30 |
| | | (BTA No. 2023-1669) |
| | : | No. 25AP-31 |
| | | (BTA No. 2023-1687) |
| | : | No. 25AP-32 |
| | | (BTA No. 2023-1723) |

:      No. 25AP-33
(BTA No. 2023-1609)

:      No. 25AP-34
(BTA No. 2023-1612)

:      No. 25AP-35
(BTA No. 2023-1625)

:      No. 25AP-36
(BTA No. 2023-1614)

:      No. 25AP-37
(BTA No. 2023-1619)

:      No. 25AP-38
(BTA No. 2023-1621)

:      No. 25AP-39
(BTA No. 2023-1623)

:      No. 25AP-40
(BTA No. 2023-1629)

:      No. 25AP-41
(BTA No. 2023-1658)

:      No. 25AP-42
(BTA No. 2023-1703)

:      No. 25AP-43
(BTA No. 2023-1724)

:      No. 25AP-44
(BTA No. 2023-1607)

:      No. 25AP-45
(BTA No. 2023-1608)

:      No. 25AP-46
(BTA No. 2023-1606)

:      No. 25AP-47
(BTA No. 2023-1620)

:      No. 25AP-48
(BTA No. 2024-260)

:      No. 25AP-49
(BTA No. 2023-1646)

:      No. 25AP-50
(BTA No. 2023-1668)

:      No. 25AP-51
(BTA No. 2023-1603)

:      No. 25AP-52
(BTA No. 2023-1750)

:      No. 25AP-53
(BTA No. 2023-1725)

:      No. 25AP-54
(BTA No. 2023-1751)

:      No. 25AP-55
(BTA No. 2023-1616)

:      No. 25AP-56
(BTA No. 2023-1690)

:      No. 25AP-57
(BTA No. 2023-1726)

|   | No. 25AP-58 |
|---|---|
| : | (BTA No. 2023-1602) |
| : | No. 25AP-59 |
|   | (BTA No. 2023-1611) |
| : | No. 25AP-60 |
|   | (BTA No. 2023-1626) |
| : | No. 25AP-61 |
|   | (BTA No. 2023-1627) |
| : | No. 25AP-62 |
|   | (BTA No. 2024-71) |
| : | No. 25AP-63 |
|   | (BTA No. 2023-1631) |
| : | No. 25AP-64 |
|   | (BTA No. 2024-169) |
| : | No. 25AP-66 |
|   | (BTA No. 2024-111) |
| : | No. 25AP-67 |
|   | (BTA No. 2024-163) |
| : | No. 25AP-68 |
|   | (BTA No. 2024-150) |
| : | No. 25AP-69 |
|   | (BTA No. 2024-116) |
| : | No. 25AP-70 |
|   | (BTA No. 2023-1639) |
| : | No. 25AP-71 |
|   | (BTA No. 2024-173) |
| : | No. 25AP-72 |
|   | (BTA No. 2023-1650) |
| : | No. 25AP-76 |
|   | (BTA No. 2024-251) |
| : | No. 25AP-77 |
|   | (BTA No. 2024-238) |
| : | No. 25AP-78 |
|   | (BTA No. 2024-165) |
| : | No. 25AP-79 |
|   | (BTA No. 2024-107) |
| : | No. 25AP-80 |
|   | (BTA No. 2024-51) |
| : | No. 25AP-81 |
|   | (BTA No. 2024-76) |
| : | No. 25AP-101 |
|   | (BTA No. 2024-202) |
| : | No. 25AP-102 |
|   | (BTA No. 2024-156) |
| : | No. 25AP-103 |
|   | (BTA No. 2023-1688) |
| : | No. 25AP-104 |
|   | (BTA No. 2023-1736) |
| : | No. 25AP-105 |
|   | (BTA No. 2023-1699) |

:      No. 25AP-107
(BTA No. 2023-1709)

:      No. 25AP-108
(BTA No. 2024-198)

:      No. 25AP-109
(BTA No. 2023-1721)

:      No. 25AP-110
(BTA No. 2024-211)

:      No. 25AP-111
(BTA No. 2024-118)

:      No. 25AP-112
(BTA No. 2024-263)

:      No. 25AP-113
(BTA No. 2024-49)

:      No. 25AP-114
(BTA No. 2024-181)

:      No. 25AP-115
(BTA No. 2023-1715)

:      No. 25AP-116
(BTA No. 2023-1722)

:      No. 25AP-117
(BTA No. 2024-353)

:      No. 25AP-118
(BTA No. 2024-61)

:      No. 25AP-119
(BTA No. 2023-1696)

:      No. 25AP-120
(BTA No. 2023-1702)

:      No. 25AP-121
(BTA No. 2023-1732)

:      No. 25AP-122
(BTA No. 2023-1701)

:      No. 25AP-123
(BTA No. 2023-1672)

:      No. 25AP-124
(BTA No. 2023-1674)

:      No. 25AP-125
(BTA No. 2023-1704)

:      No. 25AP-126
(BTA No. 2023-1685)

:

:      (REGULAR CALENDAR)

:

---

# D E C I S I O N

Rendered on April 28, 2026

---

**On brief:** *Rich & Gillis Law Group, LLC*, and *Mark H. Gillis*, for appellant. **Argued:** *Kelley E. Gorry*.

**On brief:** *Vorys, Sater, Seymour and Pease LLP, Nicholas M.J. Ray, Lauren M. Johnson*, and *Steven L. Smiseck*; *Siegel Jennings Co., LPA*, and *Jason P. Lindholm*; *Siegel Jennings Co., LPA*, and *Stephen M. Nowak*; *Sleggs, Danzinger & Gill Co., LPA, Todd W. Sleggs, Elizabeth Grooms Taylor*, and *Robert K. Danzinger*; *Bluestone Law Group, LLC, Charles L. Bluestone*, and *Andrew J. Merwine*; *Taft Stettinius & Hollister LLP*, and *John N. Huffman*; *Behal Duvall Law Group LLC, Robert J. Behal*, and *Margaret E. Wagner*; *Bauernschmidt Law Firm, Karen H. Bauernschmidt*, and *Kelly W. Bauernschmidt*; *Brennan Manna & Diamond, LLC*, and *Jonathan P. Ziga*; *Epstein Becker & Green, P.C., Jonathan T. Brollier*, and *Chad J. Smith*; *Onda LaBuhn Ernsberger & Boggs Co., LPA*, and *Andrew C. Clark*; *Ryan Law Firm, PLLC*, and *Edward F. Hirshberg*; and *Zeiger, Tigges & Little LLP*, and *Matthew S. Zeiger*, for property owner appellees. **Argued:** *Matthew S. Zeiger*.

---

APPEALS from the Ohio Board of Tax Appeals

LELAND, J.

{¶ 1} Appellant, Stanley J. Bahorek, appeals decisions and orders of the Board of Tax Appeals ("BTA") that affirmed decisions of the Franklin County Board of Revision ("BOR") dismissing Bahorek's complaints for lack of jurisdiction. For the following reasons, we reverse the BTA's decisions and orders, and we remand these matters to the BTA so that it can remand them to the BOR.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In Ohio, real property taxes are levied on the true value of land and improvements.[1] R.C. 5709.01 and 5713.03. "True value" is market value, or the amount for which property would sell on the open market by a willing seller to a willing buyer. *Rover Pipeline, L.L.C. v. Harris*, 2025-Ohio-2806, ¶ 29. The taxable value of real property is 35 percent of its true value. Adm.Code 5703-25-05(B).

---

[1] The exception to this true value requirement is agriculture property, which is not at issue in this appeal.

{¶ 3}   Each taxing district may levy up to ten mills of tax, equal to one percent of a property's assessed value, without voter approval.  All subsequent additional levies, called outside or voted millage, require a majority vote.  Voted millage consists of fixed-rate levies, which are taxes of a specific rate, and fixed-sum levies, which are taxes of a specific amount of money.

{¶ 4}   A tax reduction factor applies to fixed-rate levies to reduce property tax increases resulting from rising property values.  R.C. 319.301.  The tax reduction factor is a percentage by which a levy's collections are reduced to ensure that "carryover property"—property that was taxable in the prior year in the same class of property—generates the same amount of tax revenue as it did the prior year.  R.C. 319.301(B)(2).  In short, through use of the tax reduction factor, the same number of dollars are produced each year from the same amount of properties.  Due to the application of the tax reduction factor, an effective tax rate must be calculated for each fixed-rate levy every tax year.

{¶ 5}   For each tax year, the tax rates for fixed-rate and fixed-sum levies are calculated based on the property values of the entire taxing district.  R.C. 319.301 (fixed-rate levies), 5705.34 (fixed-sum levies).  Importantly, if the total property values in the taxing district increase, then the tax rates will decrease.  If the total property values of the taxing district decrease, then the tax rates will increase, although the tax rate cannot exceed the voted amount (for fixed-rate levies).

{¶ 6}   Given this relationship between property values and tax rates, if major properties are undervalued, then smaller property owners will shoulder a higher tax burden. Thus, property owners have a powerful incentive to ensure none of their neighbors' properties are undervalued. Taking advantage of this incentive, the General Assembly gave property owners the right to challenge the valuation of their neighbors' real property over a hundred years ago, in 1917.  *See* G.C. 5609 (predecessor to R.C. 5715.19), enacted in S.B. No. 177, 107 Ohio Laws 29, 43 ("Complaint against any valuation or assessment made within a current year, may be filed on or before the time limited for payment of taxes for the first half year.  Any taxpayer may file such complaint as to the valuation or assessment of his own or another's property[.]").  Although the text of the statute changed somewhat over the ensuing decades, the General Assembly consistently preserved a property owner's right to file a complaint contesting the valuation of another's real property.  Prior to the

legislative change at issue in this case, R.C. 5715.19—the statute granting property owners

the right to challenge another property's valuation—provided:

> (1) Subject to division (A)(2) of this section, a complaint against any of the following determinations for the current tax year shall be filed with the county auditor on or before the thirty-first day of March of the ensuing tax year or the date of closing of the collection for the first half of real and public utility property taxes for the current tax year, whichever is later:
>
> . . .
>
> (d) The determination of the total valuation or assessment of any parcel that appears on the tax list, except parcels assessed by the tax commissioner pursuant to section 5727.06 of the Revised Code[.]
>
> . . .
>
> Any person owning taxable real property in the county or in a taxing district with territory in the county . . . may file such a complaint regarding any such determination affecting any real property in the county, except that a person owning taxable real property in another county may file such a complaint only with regard to any such determination affecting real property in the county that is located in the same taxing district as that person's real property is located. The county auditor shall present to the county board of revision all complaints filed with the auditor.

Former R.C. 5715.19(A)(1),(d), and (f), modified by 2022 Am.Sub.H.B. No. 126.

{¶ 7}    The General Assembly imposed substantive restrictions on property owners'

ability to challenge the undervaluation of other properties in Am.Sub.H.B. No. 126, which

became effective on July 21, 2022.  Subsequent to the enactment of Am.Sub.H.B. No. 126,

R.C. 5715.19 included the following additional language:

> (6) The legislative authority of a subdivision, the mayor of a municipal corporation, or a third party complainant shall not file an original complaint with respect to property the subdivision or complainant does not own or lease unless both of the following conditions are met:
>
> (a) If the complaint is based on a determination described in division (A)(1)(d) or (e) of this section, the property was (i) sold in an arm's length transaction, as described in section 5713.03

of the Revised Code, before, but not after, the tax lien date for the tax year for which the complaint is to be filed, and (ii) the sale price exceeds the true value of the property appearing on the tax list for that tax year by both ten per cent and the amount of the filing threshold determined under division (J) of this section;

(b) If the complaint is filed by a legislative authority or mayor, the legislative authority or, in the case of a mayor, the legislative authority of the municipal corporation, first adopts a resolution authorizing the filing of the original complaint at a public meeting of the legislative authority.

R.C. 5715.19(A)(6)(a) and (b).[2]  As used in R.C. 5715.19, "third party complainant" means "a complainant other than the property owner, the owner's spouse, a tenant authorized to file an original complaint, or any person acting on behalf of a property owner." R.C. 5715.19(A).    The General Assembly set the filing threshold referenced in R.C. 5715.19(A)(6)(a)(ii) at $500,000 for 2022.  R.C. 5715.19(J).

{¶ 8}    The Ohio Legislative Service Commission warned the General Assembly that the changes to R.C. 5715.19 would result in lower property values and higher tax rates.  The Final Fiscal Note & Local Impact Statement regarding Am.Sub.H.B. No. 126 stated:

The effect on tax revenue of these lower valuations with the bill would be partly offset by smaller tax reduction factors, resulting in higher effective tax rates. . . . The tax rates on levies to raise fixed amounts of money, such as bond levies, would be adjusted higher than under current law to offset the effect of the lower values with the bill.

Ohio Legislative Service Commission, Final Fiscal Note & Local Impact Statement to Am.Sub.H.B. No. 126, at 1-2 (Apr. 22, 2022), https://www.legislature.ohio.gov/download?key=18963 (accessed Apr. 23, 2026) [https://perma.cc/3U7B-XMLX].  Crucially, the Ohio Legislative Service Commission then reported to the General Assembly, "These adjustments will tend to shift tax payment obligations to taxpayers other than those whose taxes could go up as a result of complaints by school districts and other[s] . . . under current law." *Id.* at 2; *accord* BTA Hearing Record

---

[2] We recognize that the General Assembly has amended R.C. 5715.19(A)(6) since Am.Sub.H.B. No. 126. *See* 2025 Am.Sub. H.B. No. 96. Those amendments, however, are not at issue in this appeal, so we do not refer to them.

Tr. at 60-62 (explaining how undervaluation of a property for a particular tax year irreversibly shifts the tax burden to other properties in the same taxing district). Under the then current law, businesses' property taxes went up when school districts and other property owners complained about property valuations. (Stipulations of Fact & Exs., Ex. 22 (recognizing that the "vast majority" of the undervaluation complaints filed with county boards of revision "are made against businesses owning or leasing commercial and industrial real property").) Thus, once in operation, Am.Sub.H.B. No. 126 would decrease commercial property owners' taxes at the expense of ordinary Ohioans.

{¶ 9} In March 2023, Bahorek, an owner of real property in Franklin County, filed complaints with the BOR against appellees, Columbus Capital Portfolio L.L.C.; Trotters Park, L.L.C.; New Stafford House L.L.C.; Easton 98GSOP L.L.C.; Timbercreek Apartments L.L.C.; HOTL TIC 1 L.L.C.; New Copley Park L.L.C.; Andmark Autumn Springs L.L.C.; Sunny Court L.P.; Farms OH, L.L.C.; Orchard OH L.L.C.; Hayden Lofts L.L.C.; BVF-V Heathermoor L.L.C.; BVF-V Saw Mill L.L.C.; TA Sawmill Fee Owner L.L.C.; Winchester Park Owner, L.L.C.; 0 Outerbelt Street L.L.C.; BVF-V Lake Forest L.L.C.; AP Harvard TIC 1 L.L.C. and AP Harvard TIC 2 L.L.C.; Park Vista I L.P.; Rossi OH Partners L.L.C.; Park Place I L.P.; Stonecreek L.P.; Times Square at Tuttle Crossing L.L.C.; New Grafton Park L.L.C.; Orleans Village OH L.L.C.; Cyclone Crosspoint 208 L.L.C.; University Gardens Property L.L.C.; BVF-V Perimeter L.L.C.; BVF-V Bedford L.L.C.; BVF-V Wren L.L.C.; New Sheldon Park L.L.C.; BVF-V Sterling L.L.C.; AP Greenhill Village L.L.C.; AP Ravine Bluff, L.L.C.; BTR Sutton Square Property L.L.C. and Sutton Square Owner II L.P.; Tuttle Strathmoor Apartments, L.L.C.; SHIF Britford, L.L.C.; HPI Morse Glen L.L.C.; Hickory Creek 2, L.L.C. and Hickory Creek 1, L.L.C.; 3505 East Livingston L.L.C.; Cyclone Crown 152 L.L.C.; BVF-V Kensington L.L.C.; Edwards Arlington Park L.L.C.; Charleston SPE L.L.C.; Green TIC 3 L.L.C.; 6700 N High Street L.L.C.; Shif Mallards L.L.C.; Camden Place OH L.L.C.; New Wesbury L.L.C.; New Dublin Square L.L.C.; Wholly Cow Limited Partnership; Townhomes at McNaughten L.L.C.; Perimeter Loop Road L.L.C.; Perry Street Hotel Acquisitions L.L.C.; Medved Properties L.L.C.; ATTC Inc.; Eastport Dublin IRF, L.L.C.; New Alexander Park L.L.C.; Pizzuti Jaeger Square L.L.C.; Cyclone Parkview 216 L.L.C.; Exchangeright Net-Leased Portfolio 61 DST; Autumn Chase Columbus North Ltd.; JR Management Holdings L.L.C.; DOC-5040 Forest Drive MOB, L.L.C.; Windmiller Pointe Apts. L.P. ("Windmiller");

West Mound Estates L.L.C.; Lane and Norwich Columbus Owner, L.L.C.; Independence Village Realty L.L.C.; Alkire Investments Holdings L.L.C.; Rume Trinity Lakes, L.L.C.; Grand OM Propco L.L.C.; Broadstone JAX Portfolio, L.L.C.; Brahma 99, L.L.C.; Kanul Malhotra & Marjan Sepassi Tr.; 1050 Dearborn L.L.C.; Alum Creek Drive Owner, L.L.C.; PV Apartments L.L.C.; Parkside II, L.L.C.; HPIII Columbus IV L.L.C.; Meridian Residences L.L.C.; Hanover Acquisition L.L.C.; CREC Fund II Dublin Apartments L.L.C.; Rocky Ridge II, L.L.C.; Alum Creek Holding L.L.C.; 2307 Hamilton L.L.C.; Heritage Green Hilliard L.L.C.; Metropolitan House L.L.C.; Gateway Lakes Grove City, L.L.C.; New Worthington Ridge L.L.C.; Crown Pointe Owner, L.L.C.; and Cornerstone Village, L.L.C.

{¶ 10} Bahorek alleged in the complaints that appellees, except for Windmiller, each owned property in Franklin County that sold in recent, arm's length transactions after the January 1, 2022 tax lien date for more than the assessed value.[3] Each complaint sought to increase the auditor's valuation of the property at issue for tax year 2022. Each complaint also asserted that the requirements of R.C. 5715.19(A)(6)(a) violated the uniform rule requirement of Article XII, Section 2 of the Ohio Constitution, the Due Process and Equal Protection Clauses of the United States Constitution, and the Due Course of Law and Equal Protection Clauses of the Ohio Constitution.

{¶ 11} The BOR issued decisions dismissing each complaint for lack of jurisdiction. The BOR concluded that Bahorek failed to meet the requirements of R.C. 5715.19(A)(6)(a) because the sales on which Bahorek based his complaints occurred after the tax lien date.

{¶ 12} Bahorek appealed each dismissal to the BTA. On appeal, the BTA allowed the parties to introduce evidence relevant to determining the constitutionality of R.C. 5715.19(A)(6)(a). The BTA then issued decisions and orders affirming the BOR's decisions.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Bahorek now appeals the BTA's decisions and orders to this court, and he assigns the following errors:

> 1. The Decision is unreasonable and unlawful because the BTA relied upon revisions to R.C. 5715.19(A)(6)(a) through 2022

---

[3] Bahorek alleged that the requested change in Windmiller's value was justified based on size, location, and market analysis of similar properties.

Am. Sub. H.B. 126 ("H.B. 126") that violate both the U.S. Constitution and the Ohio Constitution.

2. Facially, and as applied to Appellant, the revision to R.C. 5715.19(A)(6)(a) to limit the filing of a board of revision complaint only upon property subject to an arm's-length sale (the "Arm's-Length Sale Restriction") violates the Uniform Rule mandated by Article XII, Section 2 of the Ohio Constitution.

3. Facially, and as applied to Appellant, the revision to R.C. 5715.19(A)(6)(a) to limit the filing of a board of revision complaint only upon property subject to an arm's-length sale occurring before, but not after, the applicable tax lien date (the "Before But Not After Tax Lien Date Restriction") violates the Uniform Rule mandated by Article XII, Section 2 of the Ohio Constitution.

4. Facially, and as applied to Appellant, the Arm's-Length Sale Restriction violates Appellant's right to equal protection of the laws as guaranteed by the 14th Amendment of the United States Constitution and Article I, Section 2 of the Ohio Constitution.

5. Facially, and as applied to Appellant, the Before But Not After Tax Lien Date Restriction violates Appellant's right to equal protection of the laws guaranteed by the 14th Amendment of the United States Constitution and Article I, Section 2 of the Ohio Constitution.

6. Facially, and as applied to Appellant, the Arm's-Length Sale Restriction violates Appellant's right to due process guaranteed by the 14th Amendment of the United States Constitution and his right to due course of law guaranteed by Article I, Section 16 of the Ohio Constitution.

7. Facially, and as applied to Appellant, the Before But Not After Tax Lien Date Restriction violates Appellant's right to due process guaranteed by the 14th Amendment of the United States Constitution and his right to due course of law guaranteed by Article I, Section 16 of the Ohio Constitution.

## III. ANALYSIS

### A. STANDING

{¶ 14} Before addressing Bahorek's assignments of error, we must address appellees' argument that Bahorek lacks standing to pursue this appeal. We find that argument unpersuasive.

{¶ 15} A litigant must establish standing before a court will determine the merits of issues presented. *Ohio Contrs. Assn. v. Bicking*, 1994-Ohio-183, ¶ 10. "The question of standing depends on whether the [appellant] ha[s] alleged some basis—grounded in common or statutory law—that entitles [it] to have a court hear [its] case." *Ohioans for Concealed Carry, Inc. v. Columbus*, 2020-Ohio-6724, ¶ 20. Because the right to appeal an administrative decision is neither inherent nor inalienable, a statute must confer the necessary standing to appeal an administrative decision. *Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals*, 2001-Ohio-24, ¶ 11; *Eric Petroleum Corp. v. Vendel*, 2025-Ohio-1238, ¶ 24 (10th Dist.); *accord Avon Lake City School Dist. v. Limbach*, 35 Ohio St.3d 118, 119 (1988) ("A litigant has no inherent right to appeal a tax determination, only a statutory right."). When a statute provides for judicial review, the standing inquiry begins with a determination of whether the statute in question authorizes review at the appellant's behest. *Ohioans for Concealed Carry, Inc.* at ¶ 23.

{¶ 16} In these cases, Bahorek predicated his appeals on R.C. 5717.04, which states:

> The proceeding to obtain a reversal, vacation, or modification of a decision of the board of tax appeals determining appeals from . . . final determinations of a local board of tax review created under section 718.11 of the Revised Code, shall be by appeal to the supreme court or to the court of appeals for the county in which the property taxed is situated or in which the taxpayer resides.

R.C. 5717.04 further provides that "[a]ppeals from decisions of the board determining appeals from decisions of county boards of revision may be instituted by any of the persons who were parties to the appeal before the board of tax appeals[.]"

{¶ 17} "R.C. 5717.04 creates statutory authorization to appeal" a BTA decision. *Newman v. Levin*, 2007-Ohio-5507, ¶ 3. In addition to this statutory authorization, to have standing to appeal, an appellant also must be aggrieved by a determination in the BTA

decision. *Id.*; *Equity Dublin Assocs. v. Testa*, 2014-Ohio-5243, ¶ 23; *accord Moskowitz v. Cuyahoga Cty. Bd. of Revision*, 2017-Ohio-4002, ¶ 11 ("In tax proceedings, a party may appeal a decision only to the extent that the decision aggrieves that party."); *Richman Properties, L.L.C. v. Medina Cty. Bd. of Revision*, 2014-Ohio-2439, ¶ 28 ("Normally, an appellant must be aggrieved by an error below in order to obtain relief on appeal."); *Wheeler v. Testa*, 2015-Ohio-188, ¶ 9 (4th Dist.) (Emphasis omitted.) ("[T]he Supreme Court of Ohio has ruled [in appeals from the BTA] that for a party to have standing to appeal an issue, that party must be aggrieved by that error."). " 'Aggrieved means deprived of legal rights or claims.' " *Snodgrass v. Testa*, 2015-Ohio-5364, ¶ 27, quoting *Cononi v. Mikhail*, 1984 Ohio App. LEXIS 8889, *16 (2d Dist. Jan. 10, 1984).

{¶ 18} Bahorek, as a party to the appeals before the BTA, is a person under R.C. 5717.04 who may appeal the BTA decisions and orders to this court. Moreover, the BTA's decisions and orders injuriously affected Bahorek. Bahorek asserted a legal right to file complaints to increase the valuations of appellees' properties, and the BTA issued decisions and orders affirming the BOR's dismissals of Bahorek's complaints. By appealing the BTA's decisions and orders, Bahorek asserts the deprivation of a legal right. Bahorek, therefore, is aggrieved and has standing to appeal to this court.

## B. CONSTITUTIONALITY OF R.C. 5715.19(A)(6)(a) UNDER THE UNIFORM RULE

{¶ 19} We now turn to the merits of Bahorek's appeals. By his first, second, and third assignments of error, Bahorek argues that R.C. 5715.19(A)(6)(a) violates the constitutional guarantee of taxation uniformity in Article XII, Section 2 of the Ohio Constitution. We agree.

{¶ 20} A court reviews the constitutionality of a statute under the de novo standard of review. *Kennedy v. W. Reserve Senior Care*, 2024-Ohio-5565, ¶ 8. The review of a statute's constitutionality begins with the presumption that the statute is constitutional. *Id.*; *Wilson v. Kasich*, 2012-Ohio-5367, ¶ 18. This presumption, however, is rebuttable. *Kennedy* at ¶ 8; *Wilson* at ¶ 18. The party contesting the validity of the statute rebuts the presumption by establishing beyond a reasonable doubt that the legislation and constitutional provisions are incompatible. *Zeigler v. Zumbar*, 2011-Ohio-2939, ¶ 24.

When incompatibility is clear, it is the duty of the court to declare the statute unconstitutional. *State v. Mole*, 2016-Ohio-5124, ¶ 11 (plurality).

{¶ 21} Since 1851, Ohio's Constitution has mandated the taxation of real property by "uniform rule." Ohio Const., art. XII, § 2 (1851) ("Laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stock, joint stock companies, or otherwise; and also all real and personal property according to its true value in money[.]"). As amended in 1929, Article XII, Section 2 of the Ohio Constitution now reads, "Land and improvements thereon shall be taxed by uniform rule according to value."

{¶ 22} The Supreme Court of Ohio first addressed what taxation by uniform rule meant in 1853, stating:

> No language in the constitution, perhaps, is more important than ["taxing by uniform rule"]; and to accomplish the beneficial purposes intended, it is essential that [these words] should be truly interpreted, and correctly applied. "*Taxing*" is required to be "*by a uniform rule;*" that is, by one and the same unvarying standard. Taxing by a uniform rule requires uniformity, not only in the *rate* of taxation, but also uniformity in the *mode* of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation; and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation.

(Emphasis in original.) *Exchange Bank v. Hines*, 3 Ohio St. 1, 15 (1853). Thus, in *Hines*, the Supreme Court joined other states that have uniform rules in their state constitutions in interpreting the Ohio's uniform rule to require equal treatment in the taxation process. As the Supreme Court of Virginia held, "[u]niformity is . . . the promise of equality of treatment among members of a tax class during the taxation process[.]" *Internatl. Paper Co. v. Isle of Wright*, 299 Va. 150, 178 (2020). Likewise, the Supreme Court of Wisconsin concluded:

> "The rule of taxation shall be uniform," that is to say, the course or mode of proceeding in levying or laying taxes shall be uniform; it shall in all cases be alike. The act of laying a tax on property consists of several distinct steps, such as the assessment or fixing of its value, the establishing of the rate, etc.; and in order to have the rule or course of proceeding uniform, each step taken must be uniform. The valuation must be uniform, the rate must be uniform. Thus uniformity in such

> a proceeding becomes equality; and there can be no uniform
> rule which is not at the same time an equal rule, operating alike
> upon all the taxable property throughout the territorial limits
> of the state, municipality or local subdivision of the
> government, within and for which the tax is to be raised.

*Knowlton v. Bd. of Supervisors*, 9 Wis. 410, 420-421 (1859).

{¶ 23} The Supreme Court of Ohio later considered the uniform rule in the *Park Investment* cases, a series of mandamus cases in which the Supreme Court held that uniform rule requires equal and uniform standards for the determination of the taxable value and assessment of real property. *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410 (1964); *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 16 Ohio St.2d 85 (1968); *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 26 Ohio St.2d 161 (1971); *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 32 Ohio St.2d 28 (1972). Echoing *Hines*, the Supreme Court stated that taxation by uniform rule mandates uniformity in the mode of assessment. *Park Invest. Co.*, 26 Ohio St.2d at 164. Moreover, under the uniform rule, real property must be taxed on the basis of the same percentage of true value. *Id.* at 167. The Supreme Court was not satisfied that the General Assembly met the requirement of the uniform rule until it passed legislation in 1972 approving a six-year cycle to reappraise all property in Ohio based on true value. *Park Invest. Co.*, 32 Ohio St.2d at 32. As shown by the Supreme Court's holding in the final *Park Investment* case, compliance with the uniform rule requires regular, accurate appraisals because such appraisals ensure that all property is appraised at its true value and assessed at a uniform percentage of that value.

{¶ 24} The six-year cycle adopted in the 1972 bill mirrors Ohio's current sexennial reappraisal, the statutorily mandated practice wherein each county auditor appraises the real property in the county every six years to ensure that property is being assessed at 35 percent of its fair market value. R.C. 5713.01(B), 5713.03, 5715.24, and 5715.33; Adm.Code 5703-25-06 and 5703-25-16(A). In the third year of that cycle, the auditor conducts a reassessment, known as the triennial update. R.C. 5713.01(B), 5715.24, and 5715.33; Adm.Code 5703-25-06 and 5703-25-16(B). Additionally, the auditor may revalue any real property in the county "at any time" when the auditor finds the true or taxable value of the property has changed. R.C. 5713.01(B).

{¶ 25} Therefore, under Ohio's tax system, the duty to value real property primarily falls on county auditors. However, Ohio's tax system has historically also relied on owners of other properties within the same taxing district and other governmental entities, such as boards of education, to police real property values. R.C. 5715.19(A). Pursuant to R.C. 5715.19(A)(1), those entities may file complaints challenging the undervaluation of a parcel with the auditor, who then must present the complaint to the county board of revision. The county board of revision may then determine a new true and taxable value for the property at issue. R.C. 5715.11.

{¶ 26} Ohio courts have concluded that the current system of sexennial appraisals and triennial updates, supplemented by periodic auditor and board of revision revaluations, complies with the constitutional mandate of taxation by uniform rule. *Reynoldsburg Bd. of Edn. v. Licking Cty. Bd. of Revision*, 1997-Ohio-185; *Meyer v. Cuyahoga Bd. of Revision*, 58 Ohio St.2d 328 (1979); *Spirit Realty, L.P. v. Warren Cty. Bd. of Revision*, 2024-Ohio-4734 (12th Dist.); *J.C. Penney Properties, Inc. v. Franklin Cty. Bd. of Revision*, 1992 Ohio App. LEXIS 4583 (10th Dist. Aug. 27, 1992). The Supreme Court of Ohio has held:

> The system of taxation unfortunately will always have some inequality and nonuniformity attendant with such governmental function. It seems that perfect equality in taxation would be utopian, but yet, as a practicality, unattainable. We must satisfy ourselves with a principle of reason that practical equality is the standard to be applied in these matters, and this standard is satisfied when the tax system is free of systematic and intentional departures from this principle.

*Meyer* at 335. In other words, courts accept that perfect uniformity and equality in property valuation processes is not an obtainable standard. Consequently, property assessment practices must clear a lower bar to satisfy the uniform rule: they cannot systematically and intentionally treat properties differently.

{¶ 27} We, therefore, review the constitutionality of R.C. 5715.19(A)(6) mindful that "[t]he 'uniform rule' requirement of Section 2, Article XII, operates to assure uniformity in valuation of real property[.]" *State ex rel. Swetland v. Kinney*, 62 Ohio St.2d 23, 29 (1980). But we must also remain cognizant that the uniform rule's standards are met "when the tax

system is free of systematic and intentional departures" from uniform treatment of real property. *Meyer* at 335.

{¶ 28} R.C. 5715.19(A)(6) places two conditions on the filing of a valuation complaint. At issue in this appeal is the first condition, which prohibits "the legislative authority of a subdivision, the mayor of a municipal corporation, or a third party complainant" from filing "an original complaint" regarding property the complainant does not own unless:

> (a) If the complaint is based on a determination described in division (A)(1)(d) or (e) of this section, the property was (i) sold in an arm's length transaction, as described in section 5713.03 of the Revised Code, before, but not after, the tax lien date for the tax year for which the complaint is to filed, and (ii) the sale price exceeds the true value of the property appearing on the tax list for that tax year by both ten per cent and the amount of the filing threshold determined under division (J) of this section.

Thus, this condition—which, actually, amounts to three conditions—precludes the filing of an undervaluation complaint unless (1) the property is sold in an arm's length transaction, (2) the arm's length transaction occurs before the relevant tax lien date, and (3) the sale price exceeds the true value of the property on the tax list by both 10 percent and, for tax year 2022, $500,000.

{¶ 29} Quite unescapably, these conditions discriminate between the type of real properties subject to undervaluation complaints. R.C. 5715.19(A)(6)(a) precludes the filing of an undervaluation complaint unless the property meets certain criteria. Depending on characteristics intrinsic to the particular property, some real properties obtain a safe harbor from undervaluation complaints, some do not. Only those properties that fit the criteria are at jeopardy for an increase in valuation.

{¶ 30} As the Supreme Court of Ohio warned in *Hines*, when valuation rules do not operate uniformly, the result is inequality in the burden in taxation. *Hines*, 3 Ohio St. at 15. Discrimination amongst property subject to BOR complaints will allow certain properties to remain undervalued, resulting in overall lower taxable values. Ohio Legislative Service Commission, Final Fiscal Note & Local Impact Statement to Am.Sub.H.B. No. 126, at 1-2 (Apr. 22, 2022), https://www.legislature.ohio.gov/download?key=18963 (accessed

Apr. 23, 2026) [https://perma.cc/3U7B-XMLX].   Lower taxable values cause higher effective tax rates for fixed-rate levies and higher tax rates for fixed-sum levies.  These higher rates will be especially onerous for average Ohioans.  The conditions on filing BOR complaints "will tend to shift tax payment obligations to taxpayers other than those whose taxes could go up as a result of complaints by school districts and other[s] . . . under current law." *Id.* at 2.  Consequently, ordinary Ohioans—who generally were not the subject of BOR complaints—will bear the burden of paying the taxes that commercial property owners will avoid by keeping their properties undervalued.

{¶ 31} Imposing the R.C. 5715.19(A)(6)(a) conditions on the filing of an undervaluation complaint blatantly treats properties differently; it exposes some properties to a correction in valuation but allows others to remain undervalued.  R.C. 5715.19(A)(6)(a), therefore, is a systematic and intentional departure from the uniform valuation of real property.   As a result, R.C. 5715.19(A)(6)(a) violates the uniform rule and is unconstitutional under Article XII, Section 2 of the Ohio Constitution.  Accordingly, we sustain Bahorek's first, second, and third assignments of error.

{¶ 32} Our resolution of Bahorek's first, second, and third assignments of error renders his fourth, fifth, sixth, and seventh assignments of error moot.  Consequently, we do not address those assignments of error.

## C. REMEDY

{¶ 33} Having found R.C. 5715.19(A)(6)(a) unconstitutional, we now must determine the appropriate remedy.   Bahorek argues that we should sever the unconstitutional portion of R.C. 5715.19(A)(6) from the remainder of the statute.  We agree.

{¶ 34} When only a portion of a statute is invalid, a court may sever that portion if "the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application[.]" R.C. 1.50.  Consistent with this law, a court must apply a three-part test to determine whether it can sever an invalid portion of a statute, or it must strike down the entire law:

> " '(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause

or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?' "

*State v. Noling*, 2016-Ohio-8252, ¶ 34, quoting *Geiger v. Geiger*, 117 Ohio St. 451, 466 (1927), quoting *State v. Bickford*, 28 N.D. 36 (1913). A court may sever the unconstitutional portion of the statute when the answer to the first question is "yes," and the answer to the second and third questions is "no." *Id.*

{¶ 35} As we stated above, the entirety of R.C. 5715.19(A)(6) states:

> (6) The legislative authority of a subdivision, the mayor of a municipal corporation, or a third party complainant shall not file an original complaint with respect to property the subdivision or complainant does not own or lease unless both of the following conditions are met:
>
> (a) If the complaint is based on a determination described in division (A)(1)(d) or (e) of this section, the property was (i) sold in an arm's length transaction, as described in section 5713.03 of the Revised Code, before, but not after, the tax lien date for the tax year for which the complaint is to be filed, and (ii) the sale price exceeds the true value of the property appearing on the tax list for that tax year by both ten per cent and the amount of the filing threshold determined under division (J) of this section;
>
> (b) If the complaint is filed by a legislative authority or mayor, the legislative authority or, in the case of a mayor, the legislative authority of the municipal corporation, first adopts a resolution authorizing the filing of the original complaint at a public meeting of the legislative authority.

{¶ 36} If we remove subdivision R.C. 5715.19(A)(6)(a) and the words "both of" from subdivision R.C. 5715.19(A)(6), we excise the unconstitutional portion of the statute. We leave standing subdivision R.C. 5715.19(A)(6)(b), the condition requiring a resolution by a legislative authority prior to the filing of a complaint. Our revision of this language results in a comprehensible statute. We, consequently, determine that the answer to the first *Geiger* question is "yes."

{¶ 37} As to the second question, we conclude that R.C. 5715.19(A)(6)(a) is not so connected with the general scope of the whole as to make it impossible to give effect to the apparent intent of the General Assembly if that subdivision is severed. The intent of

Am.Sub.H.B. No. 126, as emphasized by the testimony of the special interest groups in favor of it and the General Assembly debate, is to achieve transparency and accountability in the valuation complaint process. (Stipulations of Fact & Exs., Exs. 2, 5, 8, 9, 11, 12, 14, 15, 18, 20.) As the County Auditors' Association of Ohio testified to the Ohio Senate Ways and Means Committee, "The purpose of this legislation is to require notice and passage of a resolution before the filing of a Board of Revision complaint by a school district or other legislative authority. This bill will create an extra layer of transparency and accountability in the property value complaint process[.]" (Stipulations of Fact & Exs., Ex. 19.) The General Assembly included the notification and resolution requirements so property owners could communicate with legislative authorities prior to the filing of a complaint, and legislative authorities could then debate the wisdom of filing the complaint.

{¶ 38} The portions we sever from R.C. 5715.19(A)(6) do not affect the provisions of Am.Sub.H.B. No. 126 that require notification and adoption of a resolution before the filing of a valuation complaint. School districts and other legislative authorities must still provide property owners with the transparency and accountability the General Assembly intended them to receive under the statute. Therefore, we determine the answer to the second *Geiger* question is "no."

{¶ 39} The third question asks whether it is necessary to insert any words or terms to give effect to the constitutional part of the statute. We recognize that the severance here does not result in a perfectly drafted statute, but it does not require the addition of any words. We thus determine that the answer to the third *Geiger* question is "no."

{¶ 40} Having found the *Geiger* test met, we excise subdivision R.C. 5715.19(A)(6)(a) in its entirety and the words "both of" from subdivision R.C. 5715.19(A)(6). With this severance, R.C. 5715.19 is rendered constitutional.

### D. CERTIFICATION OF CONFLICT

{¶ 41} As a final matter, we certify to the Supreme Court of Ohio a conflict between our decision and the decision of the Fifth District Court of Appeals in *Gillis v. Delaware Cty. Bd. of Revision*, 2024-Ohio-5669 (5th Dist.), regarding the constitutionality of R.C. 5715.19(A)(6)(a). Article IV, Section 3(B)(4) of the Ohio Constitution vests in the courts of appeals the power to "certify the record of [a] case to the supreme court for review and final determination" whenever "the judges . . . find that a judgment upon which they

have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state[.]" We thus certify to the Supreme Court of Ohio:

> Does R.C. 5715.19(A)(6)(a) as adopted by Am.Sub.H.B. No. 126
> violate the uniform rule requirement of Article XII, Section 2 of
> the Ohio Constitution?

## IV. CONCLUSION

{¶ 42} For the foregoing reasons, we sustain Bahorek's first, second, and third assignments of error, which moots Bahorek's fourth, fifth, sixth, and seventh assignments of error. We reverse the BTA orders in each of these cases, and we remand these cases to the BTA so that it can remand them to the BOR for it to consider and rule on Bahorek's complaints and the counter-complaints.

*Judgments reversed*;
*causes remanded to the Board of Tax Appeals.*

JAMISON and DINGUS, JJ., concur.